## Pennsylvania Railroad Company, Appellant, *v.* Holcroft Pearsol and John A. Lewis.

*Deed—Location of land—Parol evidence—Railroad.*

Where a deed conveying a right of way to a railroad company fails to describe the exact situation of the land, parol evidence is admissible to assist in ascertaining the true location of the land conveyed; and such evidence is not governed by the rule relating to the reformation of written instruments by parol evidence of what occurred at the time of their execution.

In 1872 defendants' testator conveyed to plaintiff, a railroad company, a strip of land of the width of sixty feet. There was nothing in the deed to define the location of the land except that the strip was to run from a point (not designated) in the division line on one side of the land, to a point (not designated) in the division line on the opposite side. In the following year the defendant company laid a single track on defendants' land. In an action of ejectment the railroad company claimed land of defendants within thirty feet of the center line of the railroad track. The officer of the company who conducted the negotiation with defendants' ancestor, testified that the right of way was located prior to the signing of the deed, but he did not testify that the location as then made included the land in dispute. He also testified that the location as made interfered with the landowner's kitchen which stood at the back of the house, and next to the railroad, and that the owner was allowed $100 to move it " out of the way of the road." The new kitchen was erected about four feet from the line on which the company subsequently built a wall, and upon the land in dispute. *Held*, (1) that there was evidence sufficient to overcome the presumption that the center of the track or roadbed was the center of the strip of land conveyed in the deed; (2) that a fair inference from the testimony was that a portion of the kitchen was within the right of way as located by the company, and that the main part of the dwelling house, and a part of the kitchen was outside of it; (3) that parol evidence was admissible to locate the land conveyed by the deed; (4) that the case was for the jury.

Argued Nov. 4, 1895. Appeal, No. 209, Oct. T., 1895, by plaintiff, from judgment of C. P. No. 2, Allegheny Co., Oct. T.,

1893, No. 452, on verdict for defendants. Before STER-
RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN
and FELL, JJ. Affirmed.


Ejectment for a strip of land about fourteen feet wide and four
hundred feet long in Jefferson township. Before EWING, P. J.

The facts appear by the charge of the court and the opinion
of the Supreme Court.

At the trial it appeared that on November 3, 1873, Peter
Pearsol, defendants' testator conveyed to the Pittsburg, Vir-
ginia and Charleston Railroad Company, plaintiff's lessor, a strip
of land described in the deed as follows:

Commencing at a point on the dividing line between Peter
Pearsol and W. Hodgson, thence south fifty-three (53) degrees
forty-three (43) minutes west two hundred and ninety-six (296)
feet to a point, thence on a radius of twenty-eight hundred and
ninety-five (2895) feet curving northwestwardly, three hundred
and sixty-eight (368) feet; thence south forty-six (46) degrees
twenty-one minutes (21') west, one hundred and eight (108)
feet to a point on dividing line between Peter Pearsol and John
Horne, thence south thirty (30) degrees fifteen minutes (15')
east, sixty-two (62) feet to a point, thence north forty-six de-
grees (46°) twenty-one minutes (21') east, one hundred and
twenty-one (121) feet to a point; thence on a radius of twenty-
eight hundred and thirty-five (2835) feet for three hundred and
sixty-two (362) feet to a point; thence north fifty-three (53)
degrees, forty-three (43) minutes east two hundred and ninety
(290) feet to a point on dividing line between Peter Pearsol and
William Hodgson, thence north thirty-one (31) degrees, fifty
(50) minutes west sixty (60) feet to a point, the place of be-
ginning.

There was nothing in the deed to locate the points in the
division line.

Defendants claimed under the will of Peter Pearsol.

The land claimed by the railroad company was within thirty
feet of the center of the single track railroad located by the
railroad company prior to the execution of the deed. Defend-
ants claimed that it was not included in the land actually
conveyed by the deed, and at the time it was covered by a dwell-
ing house.

Other material facts appear by the charge of the court and the opinion of the Supreme Court.

W. W. Martin, who conducted the negotiation for the purchase of the right of way of the railroad, was called as a witness for plaintiff, and was afterwards recalled on behalf of defendants and testified as follows:

I entered into negotiations with Peter Pearsol for the right of way through the property, and he granted it on the terms that is specified in that right of way there. There was some question about his kitchen—

Objected to.

By the Court: The grant in this case is indefinite from the fact that it has no starting place and nothing that fixes it by metes and bounds, and it thus becomes relevant and important if there is any testimony to fix the place of starting or fix any point. The objection is overruled.

To which ruling of the court counsel for the plaintiff excepts · and bill sealed.

The witness proceeded: The lines showed then that it would disturb his kitchen, and I allowed him a hundred dollars to move his kitchen out of the way of the road. . That's about the whole story. The kitchen stood at the back of the house next to the railroad. [1]

Cross-examination: Q. Mr. Martin, if I understand you, this conversation took place before this agreement was signed? A. Yes, sir; it was all arranged before the paper was signed. Q. And before the road was graded, or any work done through there? A. Yes, sir. Q. The conversation related to a suggested line of the railroad, I suppose? A. The line that was suggested at that time. The lines were sometimes changed. Q. And this agreement being dated in May, 1872, the conversation referred to took place some time prior, then, to the 20th day of May, 1872? A. Yes, sir.

Herman H. Snee, a witness for the defendants, testified as follows:

I was with Mr. Pearsol when this gentleman came to see him about the rights of way of the railroad. I should judge that was in the fall of 1871. Q. Can you tell what took place between them?

Objected to as incompetent and irrelevant.

Counsel for defendants proposes to show by the witness on the stand that he was present at a conversation between Captain Martin, the vice president of the plaintiff company and Mr. Peter Pearsol, at the time negotiations were pending between Captain Martin and Mr. Pearsol, and that a question arose with reference to the lines of the railway affecting Pearsol's kitchen, and the understanding or agreement that was had with reference to it; that the kitchen was to be taken out of the way of the right of way in consideration of an additional one hundred dollars, and a stone wall to be built along the line; to be followed by evidence that the stone wall was built subsequently at the point agreed upon.

Objected to as incompetent and irrelevant.

Objection overruled and bill sealed for plaintiff.

A. There had been agreements before, but this was an extra agreement. There was to be a hundred dollars more paid for taking down this kitchen and building a stone wall on the extreme lower line of the property, and the company was to build this line and they reserved the stone that came off the place there. Well, the conversation was that they was to take this kitchen down and they was to pay an additional hundred dollars for that. They was to furnish him a stone wall. Mr. Pearsol wanted a stone wall to go on there to keep the dirt from going down agin his house and he wanted that put on the line. They agreed to put this on the line, understand.

Q. Did Captain Martin point out to Mr. Pearsol, or did they agree with each other, as to where the line of the railroad would come through the kitchen or where this stone wall would be?

Objected to as incompetent and irrelevant.

Objection overruled.

A. It would be on the lower line of the survey, as I understood them in conversation. Q. I ask you whether Mr. Martin pointed out where the line would go through the kitchen, or whether Mr. Pearsol did, or how they acted?

Objected to as incompetent and irrelevant.

By the Court: The objection has already been overruled twice. The offer and objection covers all of this testimony.

A. As far as I can tell that was about the extra $100 that was to be paid for the price of the kitchen, for changing the line, and they made a mark and showed each other whereabouts

the line would pass through the other house, which would make it four or five feet from where the house stands now on the line. Q. Were you there when the stone wall was put up? A. Yes, sir. Q. Where was that wall put up with reference to the place that was pointed out at the time of this other conversation? A. It was very close according to my observation of it, very close to where it was agreed to be put. Q. Where did this kitchen stand with reference to the wall and the house? A. Right back towards the hill, under the railroad. [2]

The court charged as follows :

By deed dated the 3d day of November, 1872, and apparently acknowledged on the 3d day of January, 1873, Peter Pearsol conveyed to the Pittsburg, Virginia & Charleston Railway Company a right of way, a strip, sixty feet wide through his property in Elizabeth township, near the town of Elizabeth, and the plaintiff, the Pennsylvania Railroad Company, is the grantee of the Pittsburg, Virginia & Charleston Railway Company, and the defendants are the representatives of Peter Pearsol.

It was a strip of sixty feet in width, running across the land of Pearsol from the line of W. Hodgson on one end, to the land of John Horne on the other. There is no question raised by anybody but that the railroad is entitled to sixty feet of land across this Pearsol lot. The question is, where is it located.

Unfortunately, the deed does not locate by monuments or by any marks on the ground, where in the lot it is. It might be, so far as the deed is concerned, any place. It is like as though you were to give somebody a strip of a foot in width across this bench or desk, without saying how far from either end or marking it by anything. You could locate it any place, as far as the deed is concerned.

Now, in the absence of any testimony or facts or circumstances to the contrary, if you find that the plaintiff located a track on it, or if it has improvements on it, and there is nobody to tell you anything to the contrary, and no evidence to the contrary, the presumptions are that that track is in the center of the grant.

It seems that the plaintiff, although having sixty feet in width, enough for four tracks, only constructed one track, and it has only one track at this place yet. It was constructed, the road laid down and the iron laid, in 1873, and remains a single

track, according to the evidence, in substantially the same position it was put down in 1873. The grading was begun sometime in the fall or early winter of 1872, and the plaintiffs have given testimony in relation to the location of their track on the ground, and claim that the center of the single track, as it is on the ground, is the center of the sixty feet conveyed by this deed; and if there was nothing more, you would find for the plaintiff. They give another piece of testimony persuasive, pretty strongly persuasive if it be true, that this was the center of the right of way of sixty feet, and it is this: they call Mr. Vandervort, an engineer, for several years in the employ of the railroad company, but not an engineer at the time the road was located—nor has either side called an engineer who was engaged in the location of the road. In this description the sixty feet is not a straight line through the ground; it is, I believe, two straight lines and a curve. There is on each side of the sixty feet, first a straight line and then a curve, with a radius fixed. Beginning at the Hodgson line, it runs on a straight line 296 feet to a point, and thence a curve on a radius of 2895 feet, curving northwestwardly 368 feet; thence on a straight line, 108 feet to the Horne line; thence along the Horne line, making the sixty feet—a little more than that, because it is not on a right angle—and thence a straight line on the river side, 121 feet, and thence again, another curve, on a radius of 2835 feet, for 362 feet. You see the curve on one side has a radius of 2895 feet, and on the other side of 2835 feet. Now Mr. Vandervort says that the track as located will correspond with the center line of those two curves, with the radii given—that is my understanding of his testimony—and that if the track had been to one side of the sixty feet, instead of the center, those curves on the track, as it exists, would not have corresponded, as he says they do, to these radii given in the deed; which, if true, would be very persuasive that the track was intended at the time, and by the parties on the ground, to be located in the center of this sixty feet.

Mr. Snyder, who was called for the plaintiff, is a very competent engineer of long experience. He did not make a survey on the ground; he simply says that, with the measurements given by Mr. Vandervort, his conclusions would be correct.

On the other hand, the defendants have called two engineers

who have also made measurements on the ground and of this track, and while they would locate the center a little differently, or the lines a little differently, from each other, they both concur in saying that Mr. Vandervort's measures are not correct, that he is mistaken; or, they say that this track is not located in the center of that curve or between the curves made by the two radii described in the deed; but is located so that the curves of the track on the ground do not correspond to what they would be, if the center of the two curves were as described in the deed.

That is the substance of the testimony on each side, as it bears on this question of location, as I understand it. I have not undertaken to go into the details of their reasons. Some of you probably understand that and some do not, because it requires a knowledge of mathematics to understand the reasons for it. Now that is a question of fact for the jury, and the court expresses no opinion as to which surveyor is right and which is wrong.

The testimony shows that at the time this deed was made there was on the ground a house occupied by Mr. Pearsol. The house seems to have been on the river side of this railroad right of way, pretty close to the side of the hill, as I understand it, and it was not a large house nor a specially expensive house. Nobody has given us any estimate of its value or of the cost of removing it. It seems from the testimony that there was a kitchen stood nearer the hill than the main part of the house. Mr. Snee tells you that he heard Mr. Martin and Mr. Pearsol—that he was present when they discussed this right of way on the ground, and that Mr. Martin—who testifies that he was the man negotiating for this right of way and was vice president of the road at the time—pointed out on the ground and on the building—I think he said he marked on the kitchen—where the line would run. Then he says that he cannot tell the precise time, but thinks it was in 1871. I believe he says that, to the best of his recollection and knowledge, the building of a stone wall at this place where the kitchen was, was discussed at the time. He says that the kitchen was taken away and a stone wall was built there. There is testimony to indicate that it was built by the railroad or the railroad contractors, and that it is substantially at the place pointed out by Mr. Martin as the line of the right of way that they wanted.

In May, 1872, Mr. Pearsol signed an agreement drawn up by Mr. Martin and witnessed by him. Mr. Martin says the written part is in his handwriting, except the signature of Pearsol. It was dated the 20th of May, and describes a grant, a right of way, to the company, sixty feet wide, with the necessary slopes and embankments, or cuts and embankments, for the sum of $600, and that "this includes any change that may be necessary at my house and kitchen, by reason of grading road-bed through my ground and passing house." If it were not for this written agreement, I would have said to you that Mr. Snee's testimony was too far away from the deed and did not affect it, but I think it is evidence for you to consider in connection with this paper. Now, it is argued on the part of the defendants that this plainly implies that the kitchen was to be affected, but that the house was to stand; that the road was to pass the house, but the kitchen was to be affected as it was, and it is argued again by the plaintiff's counsel, with equal ingenuity and force, that this shows that it was expected to take the house. Well, that is for you, gentlemen.

Now there is other testimony on both sides which I have not gone over, but this is the main testimony in the case. If there were no other testimony, you would start with the fact that there is a roadbed there, and that it was undoubtedly in part graded at the time this deed was made, and that it is located there and has remained ever since, and there would be a presumption, in the absence of other testimony, that that is the center of the sixty feet; but you have other testimony, and you take all the testimony of the engineers on both sides and all the testimony given, and you determine if that track be the center of the sixty feet; and if the center of the present track be the center of the sixty feet grant, then, as I understand the testimony of the engineers, the plaintiff would be entitled to recover the land described in the writ. If you find it is not and that the line of the stone wall is the line of the grant on that side, and that that line would exclude all of the land described in the writ, why you would find for the defendants; but if you find that the plaintiff is not entitled to all of the land described in the writ (which is to be sent out with you with the plots) but is entitled to a portion of it, you will so find and endeavor to designate the portion, and come down with your decision

and we will call in the attorneys and see if they can put the verdict in precise shape. If you find for the plaintiff for its full claim, you find the first verdict I have marked here: "For the plaintiff for the land described in the writ, with six cents damages and costs." If you find for the defendants, you find the second verdict. If you find for the plaintiff for a part of the land, you will take the third.

Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* among others were, (1, 2) rulings on evidence, quoting the bill of exceptions; (6) the charge of the court, quoting the whole charge.

*George B. Gordon*, *William Scott* with him, for appellant.— The presumption is that the right of way of the railroad company "extend thirty feet on each side of the centre line:" Phila. & Reading R. R. v. Obert, 109 Pa. 193; Jones v. Ry. Co., 151 Pa. 30; Prather v. W. U. Tel. Co., 14 Am. & Eng. R. R. Cases, 1.

The evidence of Martin and Snee was improperly admitted. While parol evidence may be offered to modify a written agreement in cases of fraud, accident and mistake, or for the purpose of identifying property described in a deed, yet it must be confined to contemporary declarations. The testimony admitted was as to a conversation which took place " some time " prior to the agreement, with relation to a " line that was suggested at that time," which was of course long before the line had been located on the ground through the property: Rearick's Executors v. Rearick, 15 Pa. 66; Frey v. Heydt, 116 Pa. 601; Cozens v. Stevenson, 5 S. & R. 421; Bertsch v. Lehigh Coal & Nav. Co., 4 Rawle, 130.

*J. S. Ferguson*, *E. G. Ferguson* and *J. R. McQuaide* with him, for appellees.

OPINION BY MR. JUSTICE McCOLLUM, February 10, 1896:

It is conceded by the parties to this suit that prior to the 3d of November, 1872, Peter Pearsol was the owner of the land in dispute, but it is claimed by the plaintiff that on that day he conveyed the same to its lessor, The Pittsburg, Virginia

& Charleston Railway Company. The defendants have possession of the land and claim title to it under Peter Pearsol's will dated April 20, 1881, and probated July 7, 1887. While it is undisputed that Pearsol on the 3d of November, 1872, conveyed to the above mentioned railway company a strip of his land, of the width of sixty feet, from a point in the division line between him and W. Hodgson to a point in the division line between him and John Horne, the location of the land conveyed was not defined in his deed. There was nothing in it by which it could be ascertained on what part of either division line the land which was the subject of the grant abutted, and it was necessary therefore for the parties to look elsewhere for evidence to establish its location.

The Pittsburg, Virginia & Charleston Railway Company commenced grading its road through the Pearsol lot sometime in the fall or early winter of 1872, and completed the same and laid a single track thereon in 1873, since which time there has been no material change in it at that point. The land in dispute lies between the railway tracks and the river and within thirty feet of the center of the former. The plaintiff bases its contention that this land is embraced in Pearsol's grant to its lessor on the presumption in the absence of a designation of boundaries, that the center of the roadbed is the center of the strip of land conveyed by him. The learned court below conceded that " in the absence of any testimony or facts or circumstances to the contrary " the presumption would entitle the plaintiff to a verdict for the land in suit, but thought there was evidence in the case from which the jury would be warranted in finding that it was not included in the Pearsol conveyance. The questions to be determined on this appeal are whether the evidence was admissible, and if so, whether it was sufficient to repel or overcome the presumption.

The negotiations which resulted in the conveyance were conducted in behalf of the railway company by W. W. Martin, who was its vice president, and authorized to purchase lands and secure rights of way for its use in the construction and operation of its road. It was a suggestive fact, that while he was called by the plaintiff as a witness and testified that the right of way through the Pearsol lot was located by the company's engineers before the agreement of May 20, 1872, was

signed, he did not testify that the location as then made included the land in dispute, nor was his attention directed to this important matter by either party. Another fact of considerable significance is that when it was discovered that the location as made interfered to some extent with Pearsol's kitchen, which stood at the back of his house and next to the railroad, he was allowed $100 to move it "out of the way of the road." The fair inference from Martin's testimony is that a portion of the kitchen was within the right of way as located by the company's engineers, and that the main building and a part of the kitchen were outside of it. This inference accords with the direct and positive testimony of Herman N. Snee in regard to the lower line of the right of way and the construction of a wall upon it, and with the last clause of the agreement of May 20, 1872, which was written and witnessed by Martin. The company built the wall in 1873 in accordance with the understanding between Pearsol and its representative, and it has not been changed since. There is nothing in the deed, nor in the negotiations or agreement which preceded it, which indicates that the dwelling house was included in the sale. The allowance of compensation for the interference with the kitchen does not accord with the theory which carries the lower line of the right of way beyond it. If this line passed through or below the main building there could have been no occasion for a separate assessment of the damages arising from the encroachment upon the kitchen. As we understand the evidence, the new kitchen was erected about four feet from the line on which the wall was built, and upon the land described in the summons. The circumstances to which we have referred support the contention of the defendants and are opposed to that of the plaintiff.

We think the testimony of Martin and Snee was relevant and competent, and that it had a decided tendency to discredit the claim that the land in suit was included in the sale to the railway company. We think also that this testimony was sufficient, if believed, to repel the presumption on which the contention of the plaintiff was based. It was not offered, admitted or used to set aside or modify a written instrument, but to assist in ascertaining the location of the land conveyed, in regard to which the deed was silent. The cases which relate to

the reformation of a written instrument by parol evidence of what occurred at the time of the execution of it are not applicable to the issue in the case before us.

The specifications of error are overruled and the judgment is affirmed.