JOHN H. ABERCROMBIE V. J. N. SIMMONS *et al.*

No. 14,114. (81 Pac. 208.)

SYLLABUS BY THE COURT.

1. CONVEYANCES—*Description not Indefinite.* · A railroad company purchased a strip of land for a right of way, the line of which had been surveyed and staked out but no part of the railroad had been built, and in the deed the land was described as a part of a certain quarter-section lying within fifty feet of the main track of the railroad. Within a few days after the execution of the deed a map and profile of the railroad was made by the company, and subsequently filed. *Held,* that the deed was not void because of indefiniteness in the description.

2. —— *Doubtful Description—Rule of Construction.* In construing a doubtful description in a conveyance the court will keep in mind the position of the contracting parties, and the circumstances under which they acted, and will interpret the language of the instrument in the light of these circumstances.

3. —— *Grant for Right of Way—Limitation.* An instrument which is in form a general warranty deed, conveying a strip of land to a railroad company for a right of way, will not vest an absolute title in the railroad company, but the interest conveyed is limited by the use for which the land is acquired, and when that use is abandoned the property will revert to the adjoining owner.

Error from Mitchell district court; RICHARD M. PICKLER, judge. Opinion filed June 10, 1905. Affirmed.

*Frank A. Lutz,* and *F. J. Knight,* for plaintiff in error.

*Burnham & Dashiell,* for defendants in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action of ejectment to recover a strip of land 100 feet wide that had been obtained from Joseph Simmons by the Chicago, Kansas & Western Railroad Company, and subsequently

sold by the railroad company to John H. Abercrombie. In 1887 the railroad company surveyed and staked out a route for a railroad through Mitchell county, and on July 13 of that year, when about to begin construction of the railroad over the land owned by Joseph Simmons, it purchased from him the strip of land that is the subject of this action. The conveyance that he made was in form a general warranty, wherein the property was described as "all the land in the southwest quarter of section fifteen (15), township nine (9) south, of range seven (7) west, lying within fifty feet of the center line of the main track of said railroad, and containing six and twenty-three-hundredths (6.23) acres, more or less." A week later —on July 20, 1887—the railroad company made a map and profile of the route intended to be adopted, which was subsequently filed in the office of the county clerk. The railroad was never constructed, nor even graded, over the Simmons land. The entire quarter-section was enclosed and cultivated by Joseph Simmons while he lived, and it has remained in the exclusive possession of J. N. Simmons and Laura Simmons, who became the owners of the tract. The railroad company, however, paid taxes on the strip of land until April 28, 1898, when it executed a deed purporting to convey the strip to the plaintiff, describing it as it was described in the deed from Simmons to the railroad company.

Later, in 1903, the plaintiff asserted a claim of ownership to the strip of land through the quarter-section, and as his claim was denied he brought this proceeding to enforce it. The trial court found upon the facts, which were mainly agreed to, that the strip of land was conveyed by Simmons and received by the railroad company for use as a right of way for a railroad, and that the plaintiff was not entitled to recover.

It is insisted by the plaintiff that the railroad com-

pany acquired an absolute title to the strip of land, and that nothing less was conveyed to him. The defendants contend, first, that the deed of Simmons to the railroad company was so indefinite in the description of the property conveyed as to be defective, and, second, that if the description be held to be sufficient and the instrument valid it did not convey anything more than a right of way, and hence when it was not used for that purpose it reverted to the original owner, or to those holding under him.

It is claimed that it was impossible to locate or identify the land from the description given; that the description of a part of a quarter-section "lying within fifty feet of the main track of the railroad" furnished no means of identification, where, in fact, no railroad had been built. The agreed facts, however, show that prior to the execution of the deed the company contemplated the construction of a railroad over this land, and had actually surveyed and staked out a route and line. The map and profile of the route was in the course of preparation, and was completed a few days later, and this was the one that was filed with the county clerk. The company was negotiating for land upon which to construct and operate a railroad. It had marked out on the face of the land the line or track where it proposed to build. The owner sold it to the company for that purpose, and obviously both parties contracted with reference to these facts. In construing a doubtful description in a conveyance the court must keep in mind the position of the contracting parties and the circumstances under which they acted, and interpret the language of the instrument in the light of these circumstances. When so construed we may fairly say that, as the only way of locating the strip was by a resort to the line that had been surveyed and staked out by the company as the statute authorized, the parties contracted with reference to this survey and it may be looked to as a part of the

description. Under the principle that that will be considered certain which can be made certain we can look not only to the survey but also to the map and profile made by the company.

In *D. M. & A. Rly. Co. v. Lockwood,* 54 Kan. 586, 38 Pac. 794, the court considered a description in a deed that was attacked for indefiniteness, and which purported to convey fifty feet on each side of a center line of a route that had been surveyed, staked, and located. It was said that "the law will not declare a deed void for uncertainty when the light which contemporaneous facts and circumstances furnish renders the description definite and certain," and following this rule the court held the deed to be valid. (*Tucker v. Allen,* 16 Kan. 312; *Seaton v. Hickson,* 35 id. 663, 12 Pac. 22; *Thompson v. Motor Road Co.,* 82 Cal. 497, 23 Pac. 130; *Penna. R. R., Appellant, v. Pearsol et al.,* 173 Pa. St. 496, 34 Atl. 226; *Crafts & another v. Hibbard & another,* 4 Metc. [45 Mass.] 438; *Oxford v. White,* 95 N. C. 525; *Horton v. Murden,* 117 Ga. 72, 43 S. E. 786; *Armstrong v. Mudd,* 10 B. Mon. [49 Ky.] 144, 50 Am. Dec. 545; *Lohff v. Germer,* 37 Tex. 578; *McPike v. Allman,* 53 Mo. 551.)

Was the interest that the railroad company acquired by the deed one that it could convey to plaintiff? The general rule is that in the absence of charter or statutory restrictions corporations may take, hold and convey land for any purpose not inconsistent with the objects for which they were created. It is competent for the legislature to prescribe the purpose for which land may be acquired and held by corporations, and in this state the legislature has conferred on such corporations the power "to take and hold such voluntary grants of real estate and other property as shall be made to it to aid in the construction, maintenance and accommodation of its railway; but the real estate received by voluntary grant shall be held and used for the purpose of such grant only, and to purchase

and hold, with power to convey, real estate, for the purpose of aiding in the construction, maintenance and accommodation of its railway." (Gen. Stat. 1901, § 1316.) Aside from this provision there is in the same section authority given to enter upon the lands of others for the purpose of selecting and surveying a route for a proposed railway, and in that connection to lay out a road not exceeding 100 feet in width, and a greater width where the proper construction of the road requires it. It is provided, too, that a map and profile of the route intended to be adopted shall be made, and that notice shall be given to all occupants of lands on the designated route that have not been purchased or donated. (Gen. Stat. 1901, §§ 1318, 1319.) There is another provision for obtaining land for a right of way by compulsory process under the power of eminent domain. (Gen. Stat. 1901, §§ 1359-1365.)

The statutes recognize that land for a right of way may be acquired by purchase as well as by compulsory proceedings. When so purchased for that purpose does the railroad company hold a higher or better right than where it is acquired by virtue of eminent domain? May a railroad company purchase a strip of land extending a great distance through the country and over many farms, abandon the enterprise, and then sell the strip to those who will put it to a wholly different use—one that might be both obnoxious and menacing to the adjoining owners? Where an absolute and unqualified fee-simple title is acquired by a railroad company it may of course, in the absence of express or implied restrictions, be conveyed to another. After stating this rule Judge Elliott remarks:

"But where there is an implied restriction, as is often the case in regard to the right of way, or the like, of a railroad company, the grant does not ordinarily vest a fee in the company, but vests such an estate, usually an easement, as is requisite to effect

the purpose for which the property is required. Where the grant is of 'surplus real estate,' as it is often called, that is of real estate not forming part of the railroad or its appendages, a deed effective to vest a fee in a natural person will vest that estate in a railroad company." (2 Ell. Rail. § 400.)

The fact that the deed contains covenants of warranty, or that the right acquired is designated as a fee, is not necessarily controlling. In *Jones v. Van Bochove,* 103 Mich. 98, 61 N. W. 342, consideration was given to a conveyance of a strip of land that was described as a right of way for a railroad between certain points, and although the instrument was in the form of a warranty deed it was held that an absolute title was not conveyed. In *The Cincinnati, Indianapolis, St. Louis and Chicago R'y Co. v. Geisel,* 119 Ind. 77, 21 N. E. 470, there was a deed releasing and quitclaiming to a railroad company a right of way eighty feet wide through a certain tract of land, and it was held that the company did not acquire the fee of the land. In the opinion it was said:

"It does not follow that because a railroad company may take an estate in fee, or a right of way of a defined width, it does take such an estate, or such a right of way, for parties may by their contract create a less estate than a fee, or a right less in extent than that which the law authorizes the grantee to acquire. (*Indianapolis etc. R. R. Co. v. Reynolds,* 116 Ind. 356.)"

In the case of *Hill v. Western Vermont R. R. Co. et al.,* 32 Vt. 68, 74, it was said:

"A contract to convey land for a particular use, or to a party having capacity to acquire a certain estate in land for a particular use, must of necessity carry the implication of such limitation upon the estate to be conveyed."

In *Norton v. London and Northwestern Railway Co.,* L. R. 9 Ch. D. 623, the railroad company acquired a fee to a strip of land for a right of way. A

question arose as to the right of the railroad company to erect a blind, or barrier, to obstruct the view from a building of an adjoining owner, and it was held that although the company held the fee to its right of way it held it "in that qualified manner in which land taken for particular purposes is taken," and that "they had only a right to the fee simple of the land for the purpose for which they acquired it, namely, the construction and perpetual working of the railway," and for that reason the right to build the barrier and obstruct the plaintiff's view was denied. In the same case it was also held that an abandonment of a portion of the right of way operates to vest that portion in the owner of the adjoining land.

In the case of *N. Y. C. & H. R. R. R. Co. v. Aldridge,* 135 N. Y. 83, 32 N. E. 50, 17 L. R. A. 516, a dispute arose between a landowner who had conveyed land along a water-front in fee to a railroad for a right of way and the railroad company—whether such owner of the land not conveyed was a riparian owner, or whether the right had passed to the railroad company. The decision was against the railroad company, and the court held that although the railroad company received title to its right of way—

"in fee simple by the voluntary grant of the former owners, . . . by the provisions of the statute it holds such real estate and can use it only for the purposes expressed in its charter, that of the maintenance, construction and accommodation of the railroad. For this purpose only the land can be used, and although the title granted to the company is a fee, yet as thus burdened and restricted, we think the grantor in conveying the strip did not thereby cease to be the owner of the upland within the meaning of the statute.

"The conveyance to the railroad of the strip in question is in its effects entirely unlike the conveyance to a private individual in fee simple. In the latter case, it may well be, the grantor even of so narrow a strip would lose his character of riparian owner and the grantee would acquire it. But when we con-

sider the purpose of the conveyance to the railroad and the limitations to its use which the statute itself placed upon the company, it becomes entirely plain that the grantor ought not to lose his character of riparian owner where he retains the property immediately adjoining that which he conveys." (Page 95.)

In *Chouteau v. The Mo. Pac. R'y Co.*, 122 Mo. 375, 22 S. W. 458, 30 S. W. 299, land was conveyed to a railroad company by general warranty deed for railroad purposes, and it was held that the company did not acquire a fee in the land, and, further, that the conveyance by the husband extinguished the inchoate right of ·dower of the wife in the land, although she did not join in the conveyance. In effect this was a following of the ruling made in *Kellogg v. Malin*, 50 Mo. 496, 11 Am. Rep. 426.

In *Uhl v. Railroad Co.*, 51 W. Va. 106, 41 S. E. 340, there was a contract for the execution of a deed conveying a strip of land for a right of way in fee simple, and it was· held that the words "right of way" in a grant to a railroad company mean an easement and do not pass the absolute title, and that the railroad company did not take oil or other minerals under the land.

The supreme court of Iowa, in *The Ottumwa, Cedar Falls & St. Paul R'y Co. v. McWilliams et al.*, 71 Iowa, 164, 32 N. W. 315, held that a contract that recited that certain land was to be conveyed to a railroad company for a right of way, and also that it should be conveyed by deed in fee simple, was a contract for a right of way merely, and not for a fee-simple title to the land. (See, also, ·*The People v. White*, 11 Barb. [N. Y.] 26; *Cleveland, Columbus, Cincinnati and Indianapolis R. W. Co. v. Coburn et al.*, 91 Ind. 557; *Pipe Line Co. v. D. L. & W. R. R. Co.*, 62 N. J. Law, 254, 41 Atl. 759.)

Now, as we have seen, the deed and those things to which we may look in its interpretation plainly

35—71 KAN.

show that the strip was sold on the one part, and purchased on the other, as and for a right of way for a railroad. This use, being within the contemplation of the parties, is to be considered as an element in the contract, and limits the interest that the railroad acquired. It took the strip for a specific purpose, and could hold it so long as it was devoted to that purpose. Whether the right of way purchased should be designated as an easement or as a qualified or determinable fee may not be very important. A right of way, although commonly designated as an easement, is an interest in land of a special and exclusive nature, and of a high character. In speaking of its character the supreme court of the United States said:

"A railroad right of way is a very substantial thing. It is more than a mere right of passage. It is more than an easement. We discussed its character in *New Mexico v. United States Trust Co.*, 172 U. S. 171, 19 Sup. Ct. 128, 43 L. Ed. 407. We there said (p. 183) that if a railroad's right of way was an easement it was 'one having the attributes of the fee, perpetuity and exclusive use and possession; also the remedies of the fee, and, like it, corporeal, not incorporeal, property.'" (*Western Union Tel. Co. v. Penn. R. R. et al.*, 195 U. S. 540, 570, 25 Sup. Ct. 133, 141, 49 L. Ed. 312.)

Whatever its name, the interest was taken for use as a right of way, it was limited to that use, and must revert when the use is abandoned.

We are not called upon to decide, nor do we intend to express an opinion, as to the rule applicable where lands are purchased or obtained without regard to the use to be made of them, or where there is nothing in the contract or conveyance indicating that they have been purchased for a right of way. Lands may be acquired by donation or by voluntary grant for aid in the building of railroads, and railroad companies may doubtless acquire lands for various uses in connection with railroad business that could not be taken by virtue of eminent domain, and as to these different

rules may apply.   It is intended to confine the decision to cases where the contract or conveyance shows that the land was sold and received for use as a right of way for a railroad.   The conclusion is that the plaintiff acquired no interest in these lands by the attempted conveyance by the railroad company to him, and, therefore, that the judgment of the district court is affirmed.

All the Justices concurring.

CLARK A. SMITH, J., not sitting, having been of counsel.