**MIDLAND VALLEY R. CO. v. CORN et al.**

District Court, D. Kansas, Second Division.
August 6, 1927.

**I. Railroads** ⬦69—**Title to right of way is not fee, but has attributes of fee, so long as land is used for railroad purposes.**

Title of railroad company to land acquired for right of way is not a fee, though having sub-stantially the attributes of a fee for railroad purposes so long as the land is used for railroad purposes, but when such use terminates it reverts to the grantor.

**2. Railroads** ⬦73(3)—**Under Kansas law, grantor of right of way retains fee and may use land for purpose not incompatible with use for railroad (Rev. St. Kan. 1923, 66—501).**

Under Rev. St. Kan. 1923, 66–501, providing that a railroad corporation shall have power to take and hold voluntary grants of real estate for accommodation of its railway, but that it shall be held and used for the purpose of the grant only, the grantor retains the fee and the right to use of the land for every purpose not incompatible with the right of the company to use it for railroad purposes.

**3. Railroads** ⬦73(3)—**Whether grantor's use of land conveyed for railroad right of way interferes with rights of grantee is question of fact.**

Under the law of Kansas it is a question of fact, and not of law, what use by grantor of land conveyed for right of way is a detriment to or interference with the rights of the railroad company.

**4. Railroads** ⬦73(3)—**Drilling of oil well by lessee of grantor of land for right of way held not interference with rights of railroad.**

Drilling of oil well by a lessee of the grantor to a railroad company of "a strip of land for right of way," on such strip, 125 feet from the railroad tracks and on a part of the land, which had never been used for railroad purposes, *held* not an interference with any rights of the company.

In Equity. Suit by the Midland Valley Railroad Company against Elmer Corn and others. On motion for preliminary injunction. Denied.

O. E. Swan, of Muskogee, Okl., for complainant.

H. W. Hart and Enos E. Hook, both of Wichita, Kan., for defendants.

KENNAMER, District Judge. This action was brought by the Midland Valley Railroad Company to prevent the defendants from drilling and operating an oil well on the right of way of the complainant railroad company, located on a strip of land in the town of Oxford, Sumner county, Kan. A fee-simple title is claimed by the complainant to the land in question, by virtue of the following instrument; the Midland Valley Railroad Company being the lessee of the grantee named therein:

"For and in consideration of five hundred dollars in hand paid, the receipt of which is hereby acknowledged, and the benefits to accrue to the undersigned by reason of the construction and operation of the railroad of the grantee herein, J. M. Buffington and Ione H.

Buffington, his wife, hereby conveys and warrants to the Wichita & Midland Valley Railroad Company a strip of land for a right of way over and across the following described tract of land situated in Sumner county, state of Kansas, to wit: That portion of outlot nine (9) in the city of Oxford, lying west of a line parallel to and one hundred ninety-five (195) feet distant from the center line of said railroad as now located along the west line of said outlot, containing two and seven-tenths (2.7) acres, in the city of Oxford.

"In testimony whereof, the said undersigned have hereunto set our hands and seals the 8th day of September, 1911.

"J. M. Buffington.
"Ione H. Buffington."

The defendants claim under and by virtue of an oil and gas lease executed by the grantor of the above instrument. Thus both parties claim through a common source, one J. M. Buffington. By reason of the oil and gas lease, defendants have commenced the drilling of a well which the evidence discloses is located more than 125 feet from the tracks of the complainant on the right of way. It was established by the defendants that the complainant herein has entered into a contract with the Roxana Petroleum Company, by the terms of which the Midland Valley Railroad Company is to receive a portion of the oil produced from a well being drilled on land adjoining the right of way and located 76 feet east of the well started by defendants, which constitutes the subject-matter of this action. The well of the Roxana Petroleum Company is upon lands leased by J. M. Buffington, under whom complainant and defendants claim, adjoining the right of way.

Briefly the evidence discloses that the defendants have drilled their said well to a depth of about 700 feet; that the strip of land, or rather that portion of it upon which the well is located, has never been occupied or used by the complainant company for railroad purposes since the construction of the railroad in 1911. Complainant's evidence tended to prove that the portion of the land upon which the well of defendants has been located has been continuously used by the railroad company for obtaining dirt to maintain the fill on which the tracks are located. However, the evidence introduced more clearly establishes that the parcel of land upon which the well is located lies between two fences, one of which was built by the railroad company, and the other by J. M. Buffington, and that the strip so inclosed has been used by Buffington for pasturage and passage purposes since the construction of the railroad in

21 F.(2d)—7

1911. The evidence presented upon the hearing convinces me that the drilling of the oil well, which complainant seeks to enjoin, in no manner interferes with the uses and needs of the lands for railroad purposes; that the land has not been used by the complainant for such purposes since the date of the grant, and no showing has been made indicating a possible interference with the immediate future needs by complainant.

It is contended by complainant that the deed above set forth conveyed fee title to the land, and that defendants have no right or interest in the oil, gas, or other minerals in and under the lands. It is further insisted that, if it were determined that a fee title were not conveyed to the railroad company, still defendants should be enjoined from drilling the oil well upon the lands, because such a use is incompatible with the use of the lands for railroad purposes, and further that the complainant is entitled to the exclusive use of the entire right of way for railroad purposes.

To establish the contention that complainant is the owner of the fee title to the land, the case of Bowers v. A., T. & S. F. Ry. Co., 119 Kan. 202, 237 P. 913, 42 A. L. R. 228, has been cited. The case relied upon does not sustain the contention, but merely establishes the proposition that the reversion of vacated streets attaches to ownership of land condemned or purchased for railway purposes. The court employs apt language in the course of the opinion which describes the nature and extent of the ownership of land acquired by a railway company, as follows (237 P. 916 [119 Kan. 210]): "The railway company is *virtually* the fee owner." A quotation from the Supreme Court of the United States, included in the case cited above, indicates that the Supreme Court of Kansas did not regard the railway's ownership one of fee, for it is stated "that, if a railroad's right of way was an easement, it was 'one having the attributes of the fee, perpetuity and exclusive use and possession; also the remedies of the fee, and, like it, corporeal not incorporeal property.' * * * 'A railroad's right of way has, therefore, the *substantiality* of the fee. * * *'"

[1] It is quite evident that the right of way acquired by a railway company does not rise to the dignity of a fee title; it has the "substantiality" of the fee, and the "attributes" of a fee, for railroad purposes, but the law is well established that there is a reversion to the railroad company's grantor upon a termination of the use for railroad purposes. Quoting from the above case, at page 916 of 237 P. (119 Kan. 209), we find: "It is true the most unexpected things may happen, and

it might be that the Santa Fé Railway System would go out of existence. In that event, the rule that it has only an easement in its right of way would be applied; but for all practical purposes, including burdens as well as benefits, the railway company is the owner of land acquired for railway purposes. Railway Co. v. Labette County, 113 Kan. 423, 215 P. 447."

[2] At the time complainant's lessor acquired the title to the land herein considered for the right of way, the following statutory provision was in force in Kansas: "Every railway corporation shall, in addition to the powers hereinbefore conferred, have power: * * * Second. To take and hold such voluntary grants of real estate and other property as shall be made to it to aid in the construction, maintenance and accommodation of its railway; but the real estate received by voluntary grant shall be held and used for the purpose of such grant only, and to purchase and hold, with power to convey, real estate, for the purpose of aiding in the construction, maintenance and accommodation of its railway." R. S. 1923, 66—501.

This statute has been construed by the Supreme Court of Kansas in the case of Abercrombie v. Simmons, 71 Kan. 538, 81 P. 208, 1 L. R. A. (N. S.) 806, 114 Am. St. Rep. 509, 6 Ann. Cas. 239, holding that land acquired by a railroad company, whether by purchase or compulsory proceedings, shall be held and used for the purposes of such grant only. In the instant case the instrument, which is set out above, conveyed "a strip of land for a right of way."

The Supreme Court of Oklahoma, in the case of Santa Fé, L. & E. R. Co. v. Laune, 67 Okl. 75, 168 P. 1022, following the case of Abercrombie v. Simmons, supra, employing the following language: "The deed conveying the right of way shows plainly that it was the purpose thereof to convey a right of way through the lands in controversy, and the land conveyed was limited to the use for which it was conveyed, to wit, for right of way purposes."

Chief Justice Horton, speaking for the Supreme Court of Kansas, in the case of Kansas Central Ry. Co. v. Allen, 22 Kan. 285, 31 Am. Rep. 190, said: "The former proprietor of the soil still retains the fee of the land and his right to the land for every purpose not incompatible with the rights of the railroad company. Upon the discontinuance or abandonment of the right of way, the entire and exclusive property and right of enjoyment revest in the proprietor of the soil.

After the condemnation and payment of damages, the soil and freehold belong to the owner of the land, subject to the easement or incumbrance, and such landowner has the right to the use of the condemned property, provided such use does not interfere with the use of the property for railroad purposes."

Other authorities in harmony with the rule announced in Kansas Central Ry. Co. v. Allen, supra, are Kansas City & E. R. Co. v. Kregelo, 32 Kan. 608, 5 P. 15; Railway Co. v. Burns, 70 Kan. 627, 79 P. 238; Harvey v. Railroad Co., 111 Kan. 371, 207 P. 761; Railroad Co. v. Schmuck, 69 Kan. 272, 76 P. 836; Lockwood v. Ohio River Railroad Co. (C. C. A.) 103 F. 243; Southern Pacific Railroad Co. v. San Francisco Savings Union et al., 146 Cal. 290, 79 P. 961, 70 L. R. A. 221, 106 Am. St. Rep. 36, 2 Ann. Cas. 962; Eldorado, M. & S. W. R. Co. v. Sims, 228 Ill. 9, 81 N. E. 782; Evans v. Haefner, 29 Mo. 141; Northern Pacific & M. R. Co. v. Forbis, 15 Mont. 452, 39 P. 571, 48 Am. St. Rep. 692; Consumers' Gas Trust Co. v. American Plate Glass Co., 162 Ind. 393, 68 N. E. 1020; Right of Way Oil Co. v. Gladys City Oil Gas & Manufacturing Co., 106 Tex. 94, 157 S. W. 737, 51 L. R. A. (N. S.) 268; Uhl v. Ohio River Railroad Co., 51 W. Va. 106, 41 S. E. 340.

[3] It seems to be well established in the state of Kansas that it is a question of fact, and not of law, whether the necessities of the railroad company demand exclusive occupancy of the right of way for its purposes, and what use of the property by the owner of the land is a detriment to or an interference with the rights of the road. Kansas City & E. R. Co. v. Kregelo, 32 Kan. 608, 5 P. 15; Railway Co. v. Burns, 70 Kan. 627, 79 P. 238; Harvey v. Railroad Co., 111 Kan. 371, 207 P. 761.

There is a seeming conflict in the rule announced by the Kansas Supreme Court and the language quoted above from an opinion of the Supreme Court of the United States, wherein it is stated that the railroad company's title includes the "exclusive use and possession." An examination of the situation conclusively shows that there is no conflict. The railroad company has a title to the lands conveyed for its right of ways for "railroad purposes," and shall have the exclusive use and possession for such purposes. Uses of the lands by the fee owner shall at all times be compatible with the uses for railroad purposes, and if the fee title owner attempts to use the lands for any purpose which conflicts or interferes with the use and possession of

the railroad company for "railroad purposes," he should be prevented and halted in such attempts.

[4] In the instant case the evidence introduced in support of the application for a temporary injunction fails to establish that the drilling of the well in any manner interferes with the use and possession of the land in question by the railroad company, or that it will interfere with the purposes for which it was granted to the complainant. The weight of the evidence establishes that this particular portion of the land, upon which the well is located, has been abandoned by the railroad company for any of its purposes.

It is the order of the court that complainant's application for a temporary injunction be and the same is hereby denied.