No. 42,618

HARVEST QUEEN MILL & ELEVATOR COMPANY, a Corporation, NEWMAN INVESTMENT COMPANY, a Corporation, and CHICAGO, ROCK ISLAND & PACIFIC RAILROAD COMPANY, a Corporation, *Appellants and Cross-Appellees,* v. JOHN E. SANDERS, LULA M. SANDERS, ALVIN R. SANDERS, DORIS SANDERS, ALMA D. McCLALLEN, CHARLES McCLALLEN, THE SHALLOW WATER REFINING COMPANY, a Corporation, DIANNE McCARTHY, *Appellees and Cross-Appellants,* C. M. McMULLIN and LEE E. THORN, *Appellees.*

(370 P. 2d 419)

Opinion filed April 7, 1962.

*Alvin D. Herrington,* of Wichita, and *Gene T. Bonner,* of Houston, Texas, argued the cause, and *William Tinker, Arthur W. Skaer, Hugh P. Quinn, William Porter, Darrell D. Kellogg, Richard T. Foster,* all of Wichita, *Clayton M. Davis,* of Topeka, *L. Karlton Mosteller, James D. Fellers, John C. Andrews, John Joseph Snider, Brice A. Baggett, Donald H. Clark, Larry McLane, James F. Davis, Theodore M. Elam, Larry D. Hartzog,* and *Jo C. Barton,* all of Oklahoma City, Oklahoma, were with them on the briefs for the appellants and cross-appellees.

*Paul R. Kitch,* of Wichita, argued the cause, and *Wayne Coulson, Dale M. Stucky, Donald R. Newkirk, Robert J. Hill, Gerrit H. Wormhoudt, Philip Kassebaum, John E. Rees, Robert T. Cornwell, Willard B. Thompson,* and *David W. Buxton,* all of Wichita, were with him on the briefs for the appellees and cross-appellants; *Hugo T. Wedell* and *Homer V. Gooing* of counsel.

The opinion of the court was delivered by

WERTZ, J.: This was an action by the Chicago, Rock Island & Pacific Railroad Company, a corporation, and its oil and gas lessees, plaintiffs (appellants), to quiet title to a narrow strip of land, including the underlying minerals, running across defendants Sanders' farm. Defendants (appellees), Sanders and their lessees, cross petitioned to quiet title to the entire quarter section of land owned by the Sanders, of which the strips are a part, conceding the existence of an easement for right-of-way purposes in the mentioned railroad. From a judgment entered in favor of the defendants, plaintiffs appeal. The pertinent facts follow.

Prior to the year 1887, the Chicago, Kansas and Nebraska Railway Company decided to build a railroad into Wichita. Before commencing construction it was required to file with the county clerk a map and profile of its proposed route and give written notice of such proposed construction to the occupants of the land over which the line was to be constructed (G. S. 1868, Ch. 23, §§ 48, 49, now G. S. 1949, 66-403, 66-404).

In January, 1887, a map and profile was filed by the railroad and captioned "Map of Located Line of the C. K. & N. Ry." and covered the entire route across Sedgwick county. It showed that the line diagonally crossed the farm now owned by Sanders. On February 15, 1887, George W. Long and his wife, Mary Long, then owners of the land in question, executed an instrument in writing, bearing caption "Deed," granting to the mentioned railway:

"A strip of land one hundred & one hundred & fifty feet wide of which the center line of the route and line of the Chicago Kansas and Nebraska Railway Company as the same is now surveyed staked and located is the center being Fifty & Seventy five feet each side of the center line of said route over across and through the following described tracts of land as said route and line of said railway passes through the same to wit

"The northeast quarter of Section Three (3) Township Twenty five south (25) Range two (2) East being One hundred feet wide from north line of said quarter section to Station 2703 and One Hundred & Fifty wide from Station 2703 to Station 2720 and One hundred feet wide from Station 2720 to South line of said quarter Section [Called 'Tract A' by the trial court and appellants] also in addition to the above described tract a strip of land running parallel with and adjacent thereto Fifty feet wide and Four hundred feet long being between Stations 2717 & 2721 [Called 'Tract B' by the trial court and appellants]

"Together with all such additional or extra ground out of the lands of the said Grantor or Grantors adjoining such strip of land hereby conveyed as said Company may at any time require to be paid for by said Company at the price per acre paid for said strip and said Railway Company may through its Agents employes servants or contractors encroach upon the adjoining lands outside of the limits above mentioned to which said Grantor or Grantors have title or possession *for the purpose of building or constructing its roadbed and railroad and of completing and trimming its cuts and fills and for all other purposes for the building constructing or maintaining its roadbed or of maintaining its railroad.*" (Our emphasis.)

The deed further provided that the railway company and its successors had the right to erect and maintain snow fences on the lands owned by the grantors not more than 200 feet north or west of the center line of the railway.

Subsequent to the mentioned deed, by mesne conveyances, all the interests of George W. Long and Mary Long became vested in defendants John E. and Lula M. Sanders. Subsequent to the 1887 deed, by mesne conveyances, all of the interests of the Chicago, Kansas and Nebraska Railway Company in said quarter section, acquired by the deed, became vested in plaintiff Chicago, Rock Island & Pacific Railroad Company. In 1888 the railroad completed construction of its line through the land in question, making such

cuts and embankments on both sides of the track as were necessary for the proper construction and security of the roadbed. The line followed tract A. Tract B, 50 by 400 feet, running parallel with and adjacent to tract A, did not locate tract B on either the east or west side of tract A; however, prior to construction of the line a stream crossed the center line of tract A in two places. In the construction of the line the stream was diverted, which necessitated in making cuts and embankments on both sides of the track as necessary for proper construction and security of the roadbed. It appears that both tracts were used for such purpose. No other use of the property has been made by the railroad or its successors since its construction.

On April 12, 1956, the Sanders executed an oil and gas lease covering the entire quarter section, including the right-of-way, and warranted title to all of the land. A producing oil well was drilled on the Sanders' farm.

On October 28, 1958, the Chicago, Rock Island & Pacific Railroad Company executed an oil and gas lease in favor of plaintiff Harvest Queen Mill & Elevator Company and J. E. Newman covering the strip of land in question. Subsequently Newman assigned a one-half interest in the lease to the plaintiff Newman Investment Company. In May, 1959, plaintiffs Harvest Queen Mill & Elevator Company and Newman Investment Company, under the terms of their lease from the railroad, entered upon the 50-by-400-foot tract described in the 1887 deed and began making plans to drill a test well. Defendants advised the plaintiffs that they were claiming an interest in the land and the minerals, whereupon plaintiffs filed their petition, as amended, against defendants to quiet title to the strips as described in the 1887 deed and the underlying minerals. Defendants Sanders and their lessees cross petitioned to quiet title to the entire quarter section of land owned by the Sanders, of which the strips were a part, conceding the existence of an easement for right-of-way purposes in the mentioned railroad.

The case was tried to the court, which made findings of fact and concluded as a matter of law that the 1887 deed was clearly a conveyance for railroad right-of-way purposes only and the grantors therein warranted an easement for such purposes; that plaintiffs were not the owners of the minerals that may be produced from the land described therein and that they had no right to explore for or produce the same; that title should be quieted in the defendants

as their interests appear, subject to the Chicago, Rock Island & Pacific Railroad Company's easement for railroad purposes, and entered the judgment accordingly in defendants' favor. From an order overruling plaintiffs' post-trial motions, they appeal.

Plaintiffs concede that the primary question to be resolved by this appeal is the quantum of estate which was conveyed by the 1887 deed. They assert that the instrument is a general warranty deed and by its terms it conveys to the railroad either a fee simple absolute or a fee simple determinable title in the strips of land described in the deed; that there is no language in the deed which in any way either restricts or limits the estate granted or the use to which the strips were to be put.

Defendants contend, in substance, that the deed conveyed only an easement for railroad right-of-way purposes and the right to use so much of the surface of the land as was necessary to effect the purpose of the building and maintenance of the railroad right-of-way.

In the case of *Abercrombie v. Simmons,* 71 Kan. 538, 81 Pac. 208, a railroad had acquired a right-of-way through defendant's farm by a standard form general warranty deed. Plaintiff was the railroad's grantee. He claimed that the railroad owned a fee title. It was shown that prior to the execution of the deed the railroad contemplated the construction of a railroad over his land and had actually surveyed and had staked out the route and line. The map and profile of the route was in the course of preparation and was completed a few days later and filed with the county clerk, all of which was done in the instant case with the exception that in this case the map and plat was filed with the county clerk prior to the execution of the deed to the railroad, and the deed made reference thereto. In holding that the railroad did not own a fee title, the court reviewed the pertinent statutes and stated:

"The statutes recognize that land for a right of way may be acquired by purchase as well as by compulsory proceedings. When so purchased for that purpose does the railroad company hold a higher or better right than where it is acquired by virtue of eminent domain? May a railroad company purchase a strip of land extending a great distance through the country and over many farms, abandon the enterprise, and then sell the strip to those who will put it to a wholly different use—one that might be both obnoxious and menacing to the adjoining owners? Where an absolute and unqualified fee-simple title is acquired by a railroad company it may of course, in the absence of express or implied restrictions, be conveyed to another. After stating this rule Judge Elliott remarks:

" 'But where there is an implied restriction, as is often the case in regard to the right of way, or the like, of a railroad company, the grant does not ordinarily vest a fee in the company, but vests such an estate, usually an easement, as is requisite to effect the purpose for which the property is required. . . .'

"The fact that the deed contains covenants of warranty, or that the right acquired is designated as a fee, is not necessarily controlling. . . ."

Although the railroad used a general warranty deed containing covenants of warranty, the court *held:*

". . . the deed and those things to which we may look in its interpretation plainly show that the strip was sold on the one part, and purchased on the other, as and for a right of way for a railroad. This use, being within the contemplation of the parties, is to be considered as an element in the contract, and limits the interest that the railroad acquired. It took the strip for a specific purpose, and could hold it so long as it was devoted to that purpose. Whether the right of way purchased should be designated as an easement or as a qualified or determinable fee may not be very important. A right of way, although commonly designated as an easement, is an interest in land of a special and exclusive nature, and of a high character.

"Whatever its name, the interest was taken for use as a right of way, it was limited to that use, and must revert when the use is abandoned."

Able and industrious counsel for plaintiffs have reviewed cases from foreign jurisdictions relative to conveyance of fee simple absolute and fee simple determinable title and assert that the public policy of this state as adopted in *Abercrombie v. Simmons,* supra, is not in accord with the decisions of other states, that the *Abercrombie* case was incorrectly decided under the applicable statutes and judicial decisions, that it should now be disapproved and overruled insofar as it holds that regardless of the language and form of the deed, a railroad cannot take a fee simple absolute or a fee simple determinable title in land that is to be used for right-of-way purposes, and that this court should now hold that a railroad may acquire by grant or deed a fee simple absolute or a fee simple determinable estate in land purchased for right-of-way purposes.

In the instant case the 1887 deed and those things to which we may look in its interpretation plainly show that the strips were sold by the grantor and purchased by the grantee railway company as and for a right-of-way for a railroad. This use being within the contemplation of the parties, it is to be considered as an element in the contract and limits the interest that the railroad acquired, *i. e.,* an easement for railroad purposes.

We have held that when land is devoted to railroad purposes

it is immaterial whether the railway company acquired it by virtue of an easement, by condemnation, right-of-way deed, or other conveyance. If or when it ceases to be used for railway purposes, the land concerned returns to its prior status as an integral part of the freehold to which it belonged prior to its subjection to use for railway purposes. (*Federal Farm Mortgage Corp. v. Smith*, 149 Kan. 789, 792, 89 P. 2d 838.) This court has uniformly held that railroads do not own fee titles to narrow strips taken as right-of-way, regardless of whether they are taken by condemnation or right-of-way deed. The rule is in conformity with this state's long-standing public policy and gives full effect to the intent of the parties who execute right-of-way deeds rather than going through lengthy and expensive condemnation proceedings. (*Abercrombie v. Simmons*, supra; *Bowers v. Atchison, T. & S. F. Rly. Co.*, 119 Kan. 202, 237 Pac. 913, 42 A. L. R. 228; *Disney v. Long*, 90 Kan. 309, 313, 133 Pac. 572.)

In *Midland Valley R. Co. v. Corn*, 21 F. 2d 96, 98, it was held that land acquired by a railroad company, whether by purchase or compulsory proceedings, shall be held and used for such grant only and where it was conveyed for right-of-way purposes it was limited to that use. The railroad, of course, is entitled to the exclusive use of the right-of-way while it is used for railroad purposes, but any right not inconsistent with the easement remains in the abutting owner. It must therefore be inferred that the legislature did not intend to confer upon the railroad the power to acquire title to any greater interest in land either by condemnation or by deed than was necessary for right-of-way purposes.

Generally a railroad company in acquiring land for railroad right-of-way, whether it be by grant or condemnation proceedings, is held to take not the fee, but only a special interest therein, usually termed an "easement," which special interest or title is taken for railroad purposes, that is, public purposes, so that the railroad has no right to take from such right-of-way any underlying minerals and appropriate them to its own use or convey them to others. Where a railroad merely acquires an easement of way the title to the underlying minerals found or existing within the limits of the right-of-way and below the grade of the road remain in the owner of the fee who might mine for them so long as he does not interfere with the operation of the railroad nor imperil the surface support. (*Harvey v. Railroad Co.*, 111 Kan. 371, 372, 373, 207 Pac. 761; *Railroad Co. v. Schmuck*, 69 Kan. 272, 76 Pac. 836; *Abercrombie v. Sim-*

*mons,* supra; Anno. 21 A. L. R. 1139.) We find no precedent in this state holding that a railroad acquiring a right-of-way for railroad purposes either by grant or condemnation is entitled to the underlying minerals.

For many years it has been the established law of this state that railroads receive easements only in strips taken as rights-of-way, regardless of whether they are taken by condemnation or deed. The rule is based on long-standing public policy. The *Abercrombie* case was decided in 1905. For more than a half century the public has been informed as to the rights granted by such a deed. Lawyers have repeatedly examined and passed titles based upon this court's construction of such a deed. Valuable property rights have been acquired, sold and warranted based upon the knowledge that under our law such a deed conveys only an easement for right-of-way purposes.

Where questions arise which affect titles to land, it is of great importance to the public that when they are once decided they should no longer be considered doubtful. Such decisions become rules of property, and many titles may be injuriously affected by their change. Legislatures may alter or change their laws, without injury, as they affect the future only, but where courts vacillate and overrule their own decisions on the construction of statutes affecting the title to real property, their decisions are retrospective and may affect titles purchased on the faith of their stability. Doubtful questions on subjects of this nature, when once decided, should be considered no longer doubtful or subject to change. (*Minnesota Co. v. National Co.,* 3 Wall. 332, 18 L. Ed. 42; *Bull v. Kelley,* 83 Kan. 597, 602, 603, 112 Pac. 133; 21 C. J. S., Courts, § 216, p. 396.)

Although our legislature has held twenty-eight regular sessions since the decision in the *Abercrombie* case, the statutes have not been modified, indicating that our legislators are satisfied with the interpretation of the statutes and the law as enunciated in the *Abercrombie* case, and we know of no reason at this late date for making any modification of our decision on the question involved.

It follows that the railway company, by virtue of the 1887 deed, took nothing more than an easement for right-of-way purposes to the strips of land described therein and only so much of the surface as was needed to construct, build and maintain the roadbed in the operation of their railroad, and the fee title to the property

conveyed for that purpose, including the underlying minerals, remained in the grantors or their successors in title, the defendants herein. The deed neither conveyed a fee simple absolute title nor a fee simple determinable title in the plaintiffs, and the court did not err in quieting title to the land in question and the underlying minerals in the defendants as their interests appeared.

The judgment of the trial court is affirmed.