No. 29,548.

HENRY DANIELSON and RUTH DANIELSON, *Appellants*, v. BERN-HARDT W. WOESTEMEYER and JOSEPHINE R. WOESTEMEYER, *Appellees*.

(293 Pac. 507.)

Opinion filed December 6, 1930.

*Justus N. Baird,* of Kansas City, for the appellants.

*C. H. Brooks, Willard Brooks, Howard T. Fleeson,* all of Wichita, and *Arthur J. Mellott,* of Kansas City, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action in ejectment in which the plaintiffs, as abutting landowners on the north side of an abandoned railroad right of way, seek to recover from the defendants now in possession of a tract of land lying south of their land 150 feet in width which was part of the 200-foot tract formerly used as right of way by the railway company. A general denial was filed by defendants. A stipulation was filed covering all the facts. Judgment was rendered in favor of the defendants, and plaintiffs appeal.

The real controversy arises concerning the right and title to the north 100 feet of the 200-foot strip, which appellants claim was the right of way, while appellees contend that the right of way was limited to the south 100 feet and that the north half was never considered or used as a right of way but purchased and held by the railroad company for other railroad purposes.

At the very outset it must be stated that we cannot accept the theory of the plaintiffs that their right could in any event extend to the middle of the south 100-foot strip. If the contention of the plaintiffs is correct that the entire 200-foot strip was the right of way, then they, as abutting landowners on the north, would be entitled to the north half of the entire width, or the north 100 feet. There can be no second or subsequent allotment of the south 100 feet by which the north 50 feet thereof would belong to them. This

very claim by the appellants of the north half of the south 100-foot strip could well be considered as a mild concession in favor of the south 100 feet being the real and only right of way. There can be only one splitting or dividing of the right of way, and that in the middle thereof, and the right of way is either the south 100 feet or the entire 200 feet.

Appellants insist that the entire strip 200 feet wide constituted the right of way for three reasons: First, because it was used as and for a right of way; second, because it was regularly assessed and taxed by the state tax commission; and third, because it could under the statute have been condemned for the purpose for which it was used. As to the purpose for which this northern strip was used, the agreed statement of facts informs us that a section house of the usual type of three rooms downstairs and two upstairs was located on this north 100-foot strip; that it had been occupied by the section foreman when he was a married man during the time the road was in operation, and when not so occupied it was rented out by the railroad company to various tenants; that a well was also located on this northern strip at some distance from the section house and between the section house and the station, which was located on the north side of the railroad but on the south 100-foot strip; that there was a main-traveled highway running north and south across this north 100-foot strip which was used promiscuously by the public and by the railroad company, to reach the depot and well and for general purposes, and that during the time the railroad was in operation the part north of the track called station grounds was not fenced off, but for many years a portion of it was leased by the railroad company to the defendants and kept planted to alfalfa and other hay.

It is not contended by either party that this northern strip of 100 feet in width is what is sometimes called "surplus real estate"; both sides maintain that it was real estate that was used for railroad purposes during the time the railroad was in operation, but the real difference arises as to whether the uses to which it was put make it a part of the right of way. In this same connection we may just as well consider the other two reasons assigned by appellants for holding this north 100-foot strip was a part of the right of way: because it was regularly assessed and taxed by the state tax commission, and because it could have been condemned for the purposes for which it was used. The matter of being assessed by

the state tax commission does not determine the question here in controversy, for the statute requires the company to return and the commission to assess not only the right of way, track and roadbed, but all station houses and other buildings "situated wholly or in part on the right of way." (R. S. 79-602 and 79-607.)

In the case of *Railway Co. v. Wyandotte County*, 101 Kan. 618, 168 Pac. 687, it was held to be the duty of the state tax commission to assess and tax the part and portion of the Rex Mill property adjoining the railroad right of way, which the railroad company had devoted to railroad purposes, although the railroad company had owned the property six years prior to its being so used.

In the case of *Fischer v. Pottawatomie County Comm'rs*, 122 Kan. 662, 252 Pac. 901, there had been a contest as to the ownership of 300 of the 400 feet of right of way of the Union Pacific railroad, as it had fenced and was using only 100 feet, and it was said:

"Whether this land should have been assessed by the local assessor as real property, or by the tax commission as personal property, depended upon who owned it. Possibly it should have been assessed by the local assessor to the railroad company, if owned by it and not used in the operation of its railroad." (p. 664.)

The test as to whether railroad property is to be assessed by the state tax commission or the local assessor is whether or not it is used for railroad purposes, and this applies not only to the right of way but to other property so used. So the matter of being assessed by the state commission does not assist us in the question here involved.

Neither will the fact that the property involved could have been acquired by condemnation afford any help in reaching a solution of the matter here in issue. The right accorded railroad companies of acquiring property for railroad purposes by condemnation extends not only to right of way but "also such land as may be deemed necessary for sidetracks, depots and workshops, and water stations, materials for construction, except timber, a right of way over adjacent lands sufficient to enable such company to construct and repair its roads and stations, and a right to conduct water by aqueducts, and a right of making proper drains." (R. S. 66-901.) The land here in question was acquired by deed particularly designating the south 100 feet for right of way, and the railroad used the north half for the specific purposes above enumerated from the time

it was acquired until shortly before the railroad company discontinued operations of the road, when for the consideration of $1,000 it conveyed this north 100-foot strip, 1,500 feet long, to the defendants herein.

Appellants rely strongly upon the decision in the case of *Abercrombie v. Simmons*, 71 Kan. 538, 81 Pac. 208, and in the later case of *Barker v. Lashbrook*, 128 Kan. 595, 279 Pac. 12. Neither of these cases was concerned with the question of the width of the right of way. In the Abercrombie case, *supra*, the deed to the railroad company conveyed all the land in a certain quarter section "lying within fifty feet of the center line of the main track of said railroad." At the time the deed was executed the line of the railroad had not been surveyed or located, but later was located and still later abandoned, and the court held the description was sufficiently definite, that it conveyed an easement only and that the land upon abandonment reverted to the adjoining owner and not to the grantee of the railroad. The greater part of the opinion is devoted to the consideration of the kind of title acquired by the railroad for a right of way, and the determination is in effect that it is only an easement and not a fee title even when granted by warranty deed, regardless of whether the purpose is expressed or implied. After considering many precedents, the court concluded as follows:

"Now, as we have seen, the deed and those things to which we may look in its interpretation plainly show that the strip was sold on the one part, and purchased on the other, as and for a right of way for a railroad. This use, being within the contemplation of the parties, is to be considered as an element in the contract, and limits the interest that the railroad acquired. It took the strip for a specific purpose, and could hold it so long as it was devoted to that purpose. Whether the right of way purchased should be designated as an easement or as a qualified or determinable fee may not be very important. A right of way, although commonly designated as an easement, is an interest in land of a special and exclusive nature, and of a high character. . . .

"Whatever its name, the interest was taken for use as a right of way, it was limited to that use, and must revert when the use is abandoned.

"We are not called upon to decide, nor do we intend to express an opinion, as to the rule applicable where lands are purchased or obtained without regard to the use to be made of them, or where there is nothing in the contract or conveyance indicating that they have been purchased for a right of way. Lands may be acquired by donation or by voluntary grant for aid in the buildings of railroads, and railroad companies may doubtless acquire lands for various uses in connection with railroad business that could not be taken by virtue of eminent domain, and as to these different rules may apply. It is

intended to confine the decision to cases where the contract or conveyance shows that the land was sold and received for use as a right of way for a railroad." (pp. 545, 546.)

In the Barker case, *supra,* the controversy was between the former owner of the land adjacent to the abandoned railroad right of way and his grantee, the latter claiming by virtue of the exception of the right of way in his deed to the present abutting owner, and the holding was in favor of the abutting landowner. As stated before, neither of these cases had in it any question as to the land involved not being the right of way. In each case the strip was only 100 feet wide and both parties recognized it as being the right of way.

In the case of *Roxana Petroleum Corp. v. Jarvis,* 127 Kan. 365, 273 Pac. 661, the same principal was involved as in the Barker case, *supra,* as to whether the benefits to be derived from the exception of the right of way in a conveyance would remain in the grantor or pass to the grantee, and it was held in favor of the latter, in the following words:

"Deeds of a quarter section of land in which the numerical descriptions were followed by the expressions 'less railroad right of way' and 'excepting railroad right of way' of a named railroad, interpreted, and held to convey the interest of the grantors in the right-of-way tract." (Syl. ¶ 2.)

"It is contended, further, the general rule should not apply in this case because the right of way is wider than rights of way usually are, and the land is usable and valuable. . . . In the Sutter case, *supra,* the circuit court of appeals regarded this same right of way over the east half of blocks 87 and 88 as a 'narrow strip.' 'Narrow' is a relative term and 'strip' does not indicate exactitude of dimension. The law does not fix the minimum or maximum of either term, just as it does not fix width of a right of way. Lack of precision does not, however, make use of the terms undesirable. In this instance the width of the Midland Valley tract does not prevent it from properly being designated a right of way, and if in any case a right of way seems so wide to a grantor that he wants to keep his interest in the land, he can easily frame his deed according to the general rule." (p. 370.)

The Bowers case referred to in the opinion last above quoted is the case of *Bowers v. Atchison, T. & S. F. Rly. Co.,* 119 Kan. 202, 237 Pac. 913, and is cited by both parties to this appeal. The facts in it are more nearly parallel to those in the case at bar than any we have found. There was a 25-foot strip of land lying between the Santa Fe railway right of way and a public highway. The railway company purchased it for use in connection with operation of the road, and later the highway was abandoned and the railway

company was held to be entitled to the adjacent one-half of the highway, using the following language in the first paragraph of the syllabus:

"A forty-foot highway was established across a tract of land. The north line of the highway was twenty-five feet south of a railroad right of way. The railway company purchased the twenty-five-foot strip for use in connection with operation of the road and received a general warranty deed in the usual form. The deed in fact bounded the land on the highway, but without mentioning it, and stated the quantity of land conveyed. The deed was duly recorded, and afterwards the highway was vacated. *Held,* the grant extended to the center of the highway, subject to the public easement, and when the highway was vacated the railway company was owner of the unencumbered fee of the moiety of the way by the same title and to the same extent as of the twenty-five-foot strip." (Syl. ¶ 1.)

In the opinion it was said:

"Defendant says Baldwin's deed disclosed no intention to convey half of the highway. This is not the interpretative test. The test is whether the deed expressed intention to exclude half the highway from the grant. It is manifest the deed did not do so, and the estate of the railway company in the soil of the vacated strip is of the same nature and was acquired in the same manner as its estate in the land, which after purchase and before vacation lay between the right of way and the highway.

"There is some contention that, because defendant is a railway corporation, it lacked capacity to take the north half of the highway. . . . However, Baldwin took the consideration and executed and delivered the deed, and neither he nor those claiming under him have any standing to raise the question of *ultra vires.*" (p. 208.)

The announced principle in the opinion in the Roxanna case, *supra,* that "if in any case a right of way seems so wide to a grantor that he wants to keep his interest in the land he can easily frame his deed according to the general rule" must have been in the minds of the parties when the deed was drawn conveying the land here in question. It was not indefinite either as to description or purpose, and it leaves no doubt as to what was intended for right of way and what was not right of way. When we can draw from the deed itself the full intention of the parties thereto, such is the surest and most reliable criterion by which the matter can be determined.

"Where land for a right of way or other uses is conveyed to a railroad company, the extent of way or land acquired under such conveyance is ordinarily governed by a proper interpretation of the terms of the description or limitations employed in the instrument. The ordinary signification of the term 'right of way,' when used to describe land which a railroad corporation

owns or is entitled to use for railroad purposes, is the entire strip or tract it owns or is entitled to use for this purpose, . . . and where the railroad company acquires the fee it is for the company, and not for the adjacent land-owner, to determine how much land is reasonably necessary for depot grounds and right-of-way purposes." (33 Cyc. 164, 165.)

Our own statute (R. S. 66-901), when authorizing condemnation in addition to the right of way, directs that it be such "as may be deemed necessary."

The conveyance of this 200-foot strip to the railroad company under two descriptions was in one deed but as separately described both as to boundaries and purpose as if they had been in two different deeds. The main body of the deed is as follows:

"Witnesseth: That the said party of the first part, for and in consideration of the sum of one dollar and other consideration, to it duly paid, has sold and by these presents does remise, release, and quitclaim to the said party of the second part, its successors and assigns forever, a certain strip of land one hundred feet wide, extending through the larger tract hereinafter described, said strip of land being the route or right of way of the railroad of said second party as described and defined on the map of the route of said railroad filed in the county clerk's office. The lateral boundaries of said strip of land to be fifty feet equidistant from the center of the main railroad track of the said second party as now constituted and to extend in length through the larger tract of land hereinbefore referred to, which is more particularly described as follows, to wit: the northwest quarter of section 32, township 10, range 24 east.

"And said party of the first part for said consideration also remise, release and quitclaim unto said party of the second part another strip of land 100 feet wide by 1,500 feet long, lying parallel and adjoining the said strip of land hereinbefore described and conveyed as right of way, the said strip of land which is 100 feet wide by 1,500 feet long being bounded and described as follows, to wit: Commencing at a point in the west line of the strip of land first herein described and conveyed for right of way, one thousand and nine feet northeasterly from the point where said line of right of way intersects the west line of said section 32, thence in a northwesterly direction, at right angles with said west line of right of way, 100 feet; thence northeasterly, parallel with said west line of right of way, 1,500 feet; thence southeasterly, at right angles to the said west line of right of way, 100 feet; thence along said west line of right of way southwesterly to place of beginning, all in the county of Wyandotte and state of Kansas.

"To have and to hold all and singular the above described strip of land, route, right of way, with all the privileges and appurtenances thereunto belonging unto said party of the second part, its successors and assigns forever."

There can be no doubt as to the intention of the parties to this deed that the south 100-foot strip was the only part conveyed for right of way and the north 100-foot strip was not for right of way but for other railroad purposes. Neither can there be any question

about the instrument conveying a fee title to all of it subject, of course, to the usual rule as to right of way being only an easement regardless of the language of the deed.

Applying the usual rules of construction to the deed above set out, we are compelled to conclude that the south 100 feet only was conveyed as the right of way, and as to the north 100 feet the deed conveyed the fee for railroad purposes very much the same as was done with the 25-foot strip in the Bowers case, *supra*.

In addition to the specific references in the deed to the south half being the right of way not less than eight times, it is also designated as the "right of way proper" in the agreed statement of facts. Besides, our statute authorizing condemnation by railroads for right of way limits the width to 100 feet except for the purposes of cuttings and embankments. (R. S. 66-901.) The same limitation as to width of right of way is made in the enumeration of the powers of railroad companies. (R. S. 66-501, subdiv. 3.)

"Where there has been a grant or conveyance of land to a railroad company, the question as to what estate or interest is thereby acquired by the company must be determined from the intention of the parties as shown by the whole instrument, taken in connection with the railroad company's charter or governing statutes." (33 Cyc. 167.)

"A railroad company may acquire a fee in lands by grant, unless forbidden by statute or by some rule of law. Where there is authority to receive and hold real estate by private grant, and there is neither an express nor an implied limitation upon the authority, a fee may be taken. But where there is an implied restriction, as is often the case in regard to the right of way, or the like, of a railroad company, the grant does not ordinarily vest a fee in the company, but vests such an estate, usually an easement, as is requisite to effect the purpose for which the property is required. . . . Where the fee is acquired it may, of course, be transferred, and so, in general, may any other estate." (1 Elliott on Railroads, 3d ed., § 461; old ed., § 400.)

We find no error in the conclusion reached by the trial court that the defendants are the owners and entitled to the possession of the land described in the petition.

The judgment is affirmed.

JOHNSTON, C. J., and HARVEY, J., dissenting.