(77 P.3d 509)

No. 90,317

GARY STONE and DANIELLE STONE, *Appellees*, v. U.S.D. No. 222, *Appellant*, and GARY HADDAN, d/b/a HADDAN WRECKER & EXCAVATING, *Appellee*.

Opinion filed October 10, 2003.

*Teresa L. Sittenauer* and *David R. Cooper*, of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, for the appellant.

*Jason E. Brinegar*, of Galloway, Wiegers & Heeney, P.A., of Marysville, for the appellees.

Before MALONE, P.J., PIERRON and GREEN, JJ.

PIERRON, J.: In this interlocutory appeal, the parties dispute the ownership of land conveyed to a railroad by warranty deed and later conveyed from the railroad to Unified School District No. 222 (school district). The landowners of the land adjacent to the disputed property, Gary and Danielle Stone, argued successfully to the district court that they gained title to the land after it was abandoned by the railroad as a part of a functioning railroad. The school district brings this interlocutory appeal of the district court's ruling in the Stones' favor on the cross-motions for partial summary judgment.

On November 7, 1883, Hugh and E.J. Little conveyed a piece of land in Washington County to The Chicago Iowa and Kansas

Railroad Company (Railroad) by a warranty deed which stated the following:

"This Indenture, Made this 7th day of November A.D. 1883, between Hugh Little and E.J. Little, husband & wife, of Washington County, in the State of Kansas of the first part; and The Chicago Iowa and Kansas Railroad Company of _____ County in the State _____ of the second part:

"Witnesseth, That the said part[y] of the first part, in consideration of the sum of Five hundred and Seventy Three and 65/100 (573 65/100) Dollars, the receipt of which is hereby acknowledged, do by these presents, grant, bargain, sell and convey unto said party of the second part, its successors and assigns, all the following described REAL ESTATE, situated in the County of Washington, and State of Kansas, to-wit:

"Commencing at a point twenty (20) rods north of the South East corner of the North East quarter of Section two (2) in Town 3 S of R 3 E in Washington County State of Kansas Thence West 235 feet Thence North 15 rods thence east 235 feet Thence South 15 rods to the place of beginning.

"To have and hold the same, Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, forever:

"And said Hugh W. Little and E.J. Little for themselves and their heirs, executors or administrators, do hereby covenant, promise and agree to and with said party of the second part, that at the delivery of these presents they are lawfully seized in their own right, of an absolute and indefeasible estate of inheritance, in fee simple, of an in all and singular the above granted and described premises, with the appurtenances; that the same are free, clear, discharged and unincumbered, of and from all former and other grants, titles, charges, estates, judgments, taxes, assessments and incumberances of what nature and kind soever; and that they will WARRANT AND FOREVER DEFEND the same unto said party of the second part, its successors and assigns, against said parties of the first part, their heirs, and all and every person or persons whomsoever, lawfully claiming or to claim the same."

Approximately 6 months later, the railroad conveyed a portion of the property purchased from the Littles to F.M. Cox and W.H. Emery. The deed includes the following description:

"Commencing at a point twenty (20) rods north of the southeast corner of the northeast quarter of Section two (2), in Township three (3) South, Range three (3) East of the Sixth (6th) principal meridian; thence west two hundred and thirty-five (235) feet; thence north one hundred and thirty (130) feet; thence north sixty-seven (67) degrees east magnetic for two hundred and forty (240) feet; thence south one hundred and eighty-one (181) feet to place of beginning; and also the

small brick house now standing on the right of way immediately north of the above described tract."

After the conveyance to Cox and Emery, the railroad was left with a piece of land in the approximate shape of a trapezoid measuring 117.5 feet on the west, 235 feet on the north, 66.5 feet on the east, and 240 feet on the south.

The railroad line was eventually abandoned, but it is not clear from the record when this occurred.

The railroad eventually became the Burlington Northern Railroad Company and the disputed land was conveyed by quitclaim deed to the school district on February 25, 1986. The land was described as

"[a]ll that portion of Burlington Northern Railroad Company's right-of-way and station ground property at Washington, Kansas on the Odell, Nebraska to Concordia, Kansas Branch Line right-of-way August 15, 2003, now discontinued, varying in width on each side of the main track centerline, as originally located and constructed upon, over and across a part of the S of the NE of Section 2, Township 3 South, Range 3 East, lying Easterly of the West line of "E" Street in the Town of Washington, Washington County, Kansas."

The school district hired Gary Haddan, d/b/a Haddan Wrecker & Excavating (Haddan), to clear brush and remove dirt from the property in the spring and summer of 2001. The Stones filed a petition against the school district and Haddan for trespass on the theory that the railroad had obtained only a right of way and that once the site had been abandoned by the railroad, the land reverted to them as the adjoining landowners.

Although the school district responded that the railroad had originally been granted a fee simple, not a right of way, the district court ruled in the Stones' favor on their motion for partial summary judgment. The court determined that the original deed conveyed the land to the railroad for "railroad purposes (construction and maintenance)" and that the railroad had only been granted a right of way, not a fee simple interest in the disputed property. The court concluded that the land reverted to the Stones, the adjoining landowners, when it was abandoned by the railroad.

The school district filed a timely interlocutory appeal with this court.

The school district argues that the original deed granted a fee simple interest to the railroad, and that the railroad conveyed a fee simple interest to the school district in 1986. The Stones argue that the original deed conveyed only a right of way, which reverted to them as the adjoining landowners when the property was no longer used for railroad purposes by the railroad.

Kansas courts have dealt with disputes over ownership of land originally conveyed to a railroad for almost a century.

In *Abercrombie v. Simmons*, 71 Kan. 538, 81 Pac. 208 (1905), there was an action of ejectment to recover a strip of land 100 feet wide that had been obtained from Joseph Simmons by the Chicago, Kansas & Western Railroad Company in 1887 in Mitchell County. The conveyance was in the form of a general warranty deed. The property was described as " 'all the land in the southwest quarter of section fifteen (15), township nine (9) south, of range seven (7) west, lying within fifty feet of the center line of the main track of said railroad, and containing six and twenty-three-hundredths (6.23) acres, more or less.' " 71 Kan. at 539. The land was intended to be for a railroad right of way that was never used for that purpose.

Joseph, thereafter, treated the land as his own and cultivated it as long as he lived. It remained in the possession of J.N. Simmons and Laura Simmons, who became the owners after Joseph.

However, the railroad paid taxes on the strip until 1898, when it executed a deed purporting to convey the land to John Abercrombie. In 1903, Abercrombie asserted a claim of ownership to the strip which led to the litigation. The trial court found on the mainly undisputed facts, that the strip, was conveyed by Simmons and received by the railroad for use as a right of way and that Abercrombie was not entitled to recover.

As the *Abercrombie* court saw it on appeal, the central issue was whether the interest that the railroad acquired by the deed was one that it could convey to Abercrombie. The court reviewed various state statutes which noted that railroads could obtain land for routes by purchase, donation, and under eminent domain. The court pondered if a right of way acquired by purchase could be

held with a higher or better right than where it was acquired by virtue of eminent domain.

The *Abercrombie* court seemed to be saying that land acquired for a right of way by eminent domain, or perhaps by grant, could not then be sold by the railroad for another purpose to another party. Telegraphing its view of the issue, the court queried:

> "May a railroad company purchase a strip of land extending a great distance through the country and over many farms, abandon the enterprise, and then sell the strip to those who will put it to a wholly different use—one that might be both obnoxious and menacing to the adjoining owners?" 71 Kan. at 542.

The court noted a railroad could acquire an absolute and unqualified fee simple title which could be conveyed to another. However, the court then quoted with approval from a treatise:

> " 'But where there is an implied restriction, as is often the case in regard to the right of way, or the like, of a railroad company, the grant does not ordinarily vest a fee in the company, but vests such an estate, usually an easement, as is requisite to effect the purpose for which the property is required. Where the grant is of "surplus real estate," as it is often called, that is of real estate not forming part of the railroad or its appendages, a deed effective to vest a fee in a natural person will vest that estate in a railroad company.' (2 Ell. Rail. § 400.)" 71 Kan. at 542-43.

The court cited a number of foreign decisions that generally restricted the title a railroad could hold on land which was obtained for the purpose of a right of way.

The *Abercrombie* court concluded its analysis by stating that the land

> "was sold on the one part, and purchased on the other, as and for a right of way for a railroad. This use, being within the contemplation of the parties, is to be considered as an element in the contract, and limits the interest that the railroad acquired. It took the strip for a specific purpose, and could hold it so long as it was devoted to that purpose." 71 Kan. at 546.

After this sweeping language, the court then stated:

> "We are not called upon to decide, nor do we intend to express an opinion, as to the rule applicable where lands are purchased or obtained without regard to the use to be made of them, or where there is nothing in the contract or conveyance indicating that they have been purchased for a right of way. Lands may be acquired by donation or by voluntary grant for aid in the building of railroads, and railroad companies may doubtless acquire lands for various uses in connection

with railroad business that could not be taken by virtue of eminent domain, and as to these different rules may apply." 71 Kan. at 546-47.

In the conveyance from Simmons to the railroad, mention was made of the land in question "lying within fifty feet of the center line of the main track of said railroad." Therefore, the conveyance clearly indicated a right of way was involved.

In the present case, the school district earnestly argues that in the conveyance no mention is made of the purpose of the purchase and that it would then fall outside of the general rule of *Abercrombie*. In support of this argument, the school district cites *Nott v. Beightel*, 155 Kan. 94, 122 P.2d 747 (1942).

In *Nott*, the real estate in question was two town lots in Holton. While there were a number of collateral issues, the central one concerned the abandonment of the land by the Union Pacific Railroad Company in 1935. Nott apparently claimed ownership through adverse possession since his title was based on the fact that "he by and through his immediate predecessors in title had been continuously in open, notorious, and actual possession of the lots for more than twenty years." 155 Kan. at 94. Beightel contended that the lots had been used, at least in part, as a railroad right of way that had been abandoned in 1935. This was asserted to have caused the lots to revert to the original owners, who had conveyed the lots to Beightel.

The original deed to the railroad showed that the lots were conveyed in 1889 in fee title by warranty deed without a reversion clause and without any mention of the use to which the property would be put by the railroad. The trial court ruled in Nott's favor. Beightel argued on appeal that *Abercrombie* required a finding that the railroad's abandonment of the tracks led to a reversion to the original owners, who had conveyed their title to him.

The *Nott* court noted the exception cited in *Abercrombie*, and then in helpful detail for our purposes, said:

"The reasons for such holding in that case are not present here. It is obvious that it would be contrary to public policy for someone to whom the railroad had conveyed to own a narrow strip of land such as a railroad right of way running through farms and cities, etc., when it was no longer used for railroad purposes.

In this case the entire lots were conveyed. The record shows that only part of the lots were used for railroad purposes." 155 Kan. at 97.

The *Nott* court also cited *Danielson v. Woestemeyer*, 131 Kan. 796, 293 Pac. 507 (1930), where the court held:

" 'Where the owners of land claiming to be abutting owners on an abandoned railroad right of way whose land is separated from the real right of way or right of way proper by a strip of land to which the railroad company acquired the fee title and used it for railroad purposes other than right of way and later conveyed the same before discontinuing operations, such separation is held to deprive the first-mentioned owners of their claim of right as abutting owners in and to the right of way proper, and also in and to the intervening strip.' (Syl. ¶ 3.)" 155 Kan. at 98.

It appears from close readings of *Nott* and *Danielson* that the "use it or lose it" rule of *Abercrombie*, as was hinted at in *Abercrombie*, does not apply when the land is not mainly used as a right of way.

In the instant case, the strip of land fits the factors set out in *Abercrombie* except that there was not specific mention of the use being for a right of way in the conveyance. The land here was to be used for railroad purposes. Based on the language in *Abercrombie*, which did not restrict the ruling to cases where use for a right of way was specifically stated or implied in the conveyance, we believe the rule should be applied under these facts. The land reverts.

We have reviewed the cases of *Harvest Queen Mill & Elevator Co., v. Sanders*, 189 Kan. 536, 370 P.2d 419 (1962); *Topeka and Santa Fe Ry. Co. v. Humberg*, 9 Kan. App. 2d 205, 675 P.2d 375 (1984); and *Schoenberger v. Missouri Pacific RR Co.*, 29 Kan. App. 2d 245, 26 P.3d 700 (2000), *rev. denied* 270 Kan. 89 (2001).

In *Harvest Queen*, the purpose of the conveyance to the railroad was clearly for a right of way as set out in the conveyance; and it was held to be only an easement with the fee title to the property remaining in the original grantors.

*Humberg* dealt with property obtained for railroad purposes by condemnation and then abandoned. Since it was obtained by condemnation, even though not for a right of way, its abandonment for that purpose led to a reversion.

*Schoenberger* focused solely on the language of the conveyance instruments. However, this apparently was done because the construction of the deed was the only issue on appeal. *Schoenberger* is, therefore, not on point with the instant case where another issue, namely, the use to which the property was put, is paramount. The construction of the conveyance is not of critical importance in the instant case.

We find that since the land in question was obtained by purchase for a railroad right of way, and other railroad uses, and that easement was abandoned, the trial court was correct in ruling that the land reverted to the original grantors.

As in the other cases cited above, this ruling is applicable to relatively small portions of land. We are not called upon to rule on the effect of abandonment for railroad uses of large portions of land.

Affirmed.