No. 90,317

GARY STONE and DANIELLE STONE, *Plaintiffs/Appellees*, v. U.S.D. No. 222, *Defendant/Appellant*, and GARY HADDAN, d/b/a HADDAN WRECKER & EXCAVATING, *Defendant*.

(91 P.3d 1194)

Opinion filed June 25, 2004.

*Teresa L. Sittenauer,* of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, argued the cause, and *David R. Cooper,* of the same firm, was with her on the briefs for appellant U.S.D. No. 222.

*Jason E. Brinegar,* of Galloway, Wiegers & Heeney, P.A., of Marysville, argued the cause and was on the briefs for appellees Gary and Danielle Stone.

The opinion of the court was delivered by

DAVIS, J.: Burlington Northern Railroad Company (railroad) conveyed property to U.S.D. No. 222 (school district). The adjacent landowners Gary and Danielle Stone (Stones) were granted partial summary judgment based upon the trial court's ruling that the land reverted to the Stones when its use for a right-of-way was abandoned. The trial court concluded that notwithstanding the railroad's fee simple interest by original deed, the land was used for a right-of-way limiting the railroad's interest to a right-of-way easement only. The Court of Appeals affirmed in *Stone v. U.S.D. No. 222,* 31 Kan. App. 2d 1063, 77 P.3d 509 (2003). We granted the school district's petition for review, and reverse and remand with directions.

Facts

On November 7, 1883, Hugh and E.J. Little conveyed real estate in Washington County, Kansas, to The Chicago, Iowa & Kansas Railroad Company by warranty deed recorded on December 4, 1883:

"This Indenture, Made this 7th day of November A.D. 1883, between Hugh Little and E.J. Little, husband & wife, of Washington County, in the State of Kansas of the first part; and The Chicago Iowa and Kansas Railroad Company _____ of County in the State _____ of the second part:

"Witnesseth, That the said part[y] of the first part, in consideration of the sum of Five hundred and Seventy Three and 65/100 (573 65/100) Dollars, the receipt of which is hereby acknowledged, do by these presents, grant, bargain, sell and

convey unto said party of the second part, its successors and assigns, all the following described REAL ESTATE, situated in the County of Washington, and State of Kansas, to-wit:

"Commencing at a point twenty (20) rods north of the South East corner of the North East quarter of Section two (2) in Town 3 S of R 3 E in Washington County State of Kansas Thence West 235 feet Thence North 15 rods thence east 235 feet Thence South 15 rods to the place of beginning.

"To have and hold the same, Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, forever:

"And said Hugh W. Little and E.J. Little for themselves and their heirs, executors or administrators, do hereby covenant, promise and agree to and with said party of the second part, that at the delivery of these presents they are lawfully seized in their own right, of an absolute and indefeasible estate of inheritance, in fee simple, of an in all and singular the above granted and described premises, with the appurtenances; that the same are free, clear, discharged and un[e]ncumbered, of and from all former and other grants, titles, charges, estates, judgments, taxes, assessments and [e]ncumbrances of what nature or kind soever; and that they will WARRANT AND FOREVER DEFEND the same unto said party of the second part, its successors and assigns, against said parties of the first part, their heirs, and all and every person or persons whomsoever, lawfully claiming or to claim the same."

Six months later, by deed dated May 16, 1884, The Chicago, Iowa & Kansas Railroad Company conveyed a portion of this real estate to F.M. Cox and W.H. Emery:

"This deed is intended to convey to the said F.M. Cox and W.H. Emery all the land lying south of a line drawn fifty (50) feet south of, and parallel with, the railroad of the said Chicago, Iowa & Kansas Railroad Company; said land having been conveyed to said Railroad Company by a deed from Hugh Little and wife, dated November 7th 1983, and recorded December 7, 1883 . . . ."

The deed described the property as follows:

"Commencing at a point twenty (20) rods north of the southeast corner of the northeast quarter of Section two (2), in Township three (3) South, Range three (3) East of the Sixth (6th) principal meridian; thence west two hundred and thirty-five (235) feet; thence north one hundred and thirty (130) feet; thence north sixty-seven (67) degrees east magnetic for two hundred and forty (240) feet; thence south one hundred and eighty-one (181) feet to place of beginning; and also the small brick house now standing on the right of way immediately north of the above described tract."

After the conveyance to Cox and Emery, the railroad owned a trapezoid-shaped piece of land measuring 117.5 feet on the west, 235 feet on the north, 66.5 feet on the east, and 240 feet along the south border (subject property). Upon this subject property the railroad laid tracks and the property was used for well over 100 years as its right-of-way. Although the deeds are not in the record on appeal, we note that the district court found that surrounding landowners granted the railroad right-of-ways in their land in 1883 and 1884. The railroad line was eventually abandoned, but when this occurred is not clear from the record.

The Chicago, Iowa & Kansas Railroad Company's successor in interest, the Burlington Northern Railroad Company, conveyed the subject property to the school district by quitclaim deed dated February 25, 1986, recorded on March 14, 1986, which described the land as:

"All that portion of Burlington Northern Railroad Company's right-of-way and station ground property at Washington, Kansas on the Odell, Nebraska to Concordia, Kansas Branch Line right-of-way August 15, 2003, now discontinued, varying in width on each side of the main track centerline, as originally located and constructed upon, over and across a part of the S ½ of the NE ¼ of Section 2, Township 3 South, Range 3 East, lying Easterly of the West line of 'E' Street in the Town of Washington, Washington County, Kansas."

During the spring and summer of 2001, the school district directed defendant Gary Haddan, d/b/a/ Haddan Wrecker & Excavating (Haddan), to secure fill dirt from the subject property to backfill a hole left when a school was razed. As adjacent landowners to the subject property, the Stones filed a petition for damages based on trespass against the school district and Haddan. The Stones claimed the removal of this dirt damaged the remainder of their property by removing valuable vegetation, altering the flow of rain water, causing flooding and channel formation, and soot and dirt relocation, which has reduced the value of their property.

Both parties filed motions for partial summary judgment on the issue of ownership of the subject property. The Stones argued that the subject property reverted to them because the railroad had only obtained a right-of-way that had been since abandoned. The school district argued that the subject property did not revert to the

Stones because the railroad held the subject property in fee simple absolute and conveyed it to the school district by quitclaim deed.

Ruling in favor of the Stones, the district court found that the deeds in the chain of title showed that the property was acquired by the predecessor railroad for railroad purposes (construction and maintenance), and that the railroad held a right-of-way only because of the use for which the property was acquired. Thus, the property reverted to the Stones as the adjoining landowners on abandonment of the right-of-way. The school district filed a timely interlocutory appeal and the Court of Appeals affirmed the district court's ruling.

On petition for review, the school district argues the Court of Appeals erred in affirming the district court's order granting partial summary judgment in favor of the Stones. The school district argues the railroad was granted fee simple title in the original warranty deed and the railroad conveyed the same to the school district. The Stones argue that the railroad only had an easement in the subject property which was used as a railroad right-of-way, and the property reverted to them as adjacent landowners upon abandonment.

The question we must answer is whether the railroad's interest in the subject property was limited to a right-of-way or if it was a fee simple absolute interest. The answer to the question lies in Kansas statutory law and the past appellate decisions of Kansas. After identifying the governing statute, we will review those key past appellate decisions bearing upon the question. We will then discuss the Court of Appeals' resolution of the question. Finally, we will resolve the question presented.

Relevant Kansas Authority

A railroad may acquire an interest in real property by eminent domain, by purchase, or by voluntary grant. *Atchison, Topeka & Santa Fe Ry. Co. v. Humberg*, 9 Kan. App. 2d 205, 207, 675 P.2d 375 (1984). K.S.A. 66-501 provides that every railway corporation has the power:

"*Second.* To take and hold such voluntary grants of real estate and other property as shall be made to it to aid in the construction, maintenance and accom-

modation of its railway; but the real estate received by voluntary grant shall be held and used for the purpose of such grant only, and *to purchase and hold, with power to convey, real estate, for the purpose of aiding in the construction, maintenance and accommodation of its railway.*" (Emphasis added.)

"*Third.* To lay out its road, not exceeding one hundred feet in width, and to construct the same; and for the purpose of cuttings and embankments, to take as much more land as may be necessary for the proper construction and security of the road; and also such land as may be deemed necessary for side tracks, depots, workshops and water stations . . . ."

"If a railroad owns the land under its tracks in fee simple, the abandonment of rail service does not affect its property right at all." 65 Am. Jur. 2d, Railroads § 62. However, in Kansas, railroads take only an easement in strips taken for railroad right-of-ways regardless of whether taken by condemnation or deed. Upon abandonment, the strip reverts back to the original landowners. *Harvest Queen Mill & Elevator Co. v. Sanders*, 189 Kan. 536, 542, 370 P.2d 419 (1962).

In *Abercrombie v. Simmons*, 71 Kan. 538, 81 Pac. 208 (1905), the railroad company was about to begin construction of a railroad and purchased a strip of land 100 feet wide running through a quarter section of land from Simmons. The conveyance was made in a general warranty deed which described the property as " 'all the land in the southwest quarter of section fifteen (15), township nine (9) south, of range seven (7) west, lying within fifty feet of the center line of the main track of said railroad, and containing six and twenty-three hundredths (6.23) acres, more or less.' " 71 Kan. at 539. Although the railroad recorded a map and profile of the track route on the land, the railroad track was never graded or constructed. Simmons and his successors continued to cultivate the land, but the railroad company paid the taxes on the strip of land for nearly 12 years until it conveyed the land to Abercrombie. Abercrombie asserted ownership of the land, arguing that the railroad acquired absolute title to the land and nothing less had been conveyed to him. 71 Kan. at 539-40.

In considering if the railroad's interest acquired by the deed was one that it could convey to Abercrombie, the court first reviewed G. S. 1901, § 1316 (now K.S.A. 66-501), the statute establishing

the limitations on holding voluntary grants, purchasing, and obtaining real estate by eminent domain:

"The statutes recognize that land for a right of way may be acquired by purchase as well as by compulsory proceedings. When so purchased for that purpose does the railroad company hold a higher or better right than where it is acquired by virtue of eminent domain? May a railroad company purchase a strip of land extending a great distance through the country and over many farms, abandon the enterprise, and then sell the strip to those who will put it to a wholly different use—one that might be both obnoxious and menacing to the adjoining owners? Where an absolute and unqualified fee-simple title is acquired by a railroad company it may of course, in the absence of express or implied restrictions, be conveyed to another." 71 Kan. at 542.

After stating this rule, the court noted:

" 'But where there is an implied restriction, as is often the case in regard to the right of way, or the like, of a railroad company, the grant does not ordinarily vest a fee in the company, but vests such an estate, usually an easement, as is requisite to effect the purpose for which the property is required. Where the grant is of "surplus real estate," as it is often called, that is of real estate not forming part of the railroad or its appendages, a deed effective to vest a fee in a natural person will vest that estate in a railroad company.' (2 Ell. Rail. § 400.)"

"The fact that the deed contains covenants of warranty, or that the right acquired is designated as a fee, is not necessarily controlling." 71 Kan. at 542-43.

The court analyzed cases from several jurisdictions before concluding:

"Now, as we have seen, the deed and those things to which we may look in its interpretation plainly show that the strip was sold on the one part, and purchased on the other, as and for a right of way for a railroad. This use, being within the contemplation of the parties, is to be considered as an element in the contract, and limits the interest that the railroad acquired. It took the strip for a specific purpose, and could hold it so long as it was devoted to that purpose. Whether the right of way purchased should be designated as an easement or as a qualified or determinable fee, may not be very important. A right of way, although commonly designated as an easement, is an interest in land of a special and exclusive nature, and of a high character. . . .

"Whatever its name, the interest was taken for use as a right of way, it was limited to that use, and must revert when the use is abandoned.

"*We are not called upon to decide, nor do we intend to express an opinion, as to the rule applicable where lands are purchased or obtained without regard to the use to be made of them, or where there is nothing in the contract or conveyance indicating that they have been purchased for a right of way.* Lands may be ac-

quired by donation or by voluntary grant for aid in the building of railroads, and railroad companies may doubtless acquire lands for various uses in connection with railroad business which could not be taken by virtue of eminent domain, and as to these different rules may apply. *It is intended to confine the decision to cases where the contract or conveyance shows that it was sold and received for use as a right of way for a railroad."* (Emphasis added.) 71 Kan. at 546.

The court concluded that Abercrombie acquired no interest in the land conveyed to him by the railroad and that upon abandonment of the right-of-way use, the property reverted to the original owners and their successors in interest. 71 Kan. at 547.

*Danielson v. Woestemeyer*, 131 Kan. 796, 293 Pac. 507 (1930), was an ejectment action in which the abutting landowners on the north side of an abandoned railroad right-of-way sought to recover from the defendants a 200-foot wide tract of land, which had been conveyed to the railroad by a single deed describing the land in two 100-foot wide strips. The boundaries of the southern 100-foot strip were described as being a right-of-way and being "fifty feet equisdistant [*sic*] from the center of the main railroad track," but no mention of the purpose of the northern strip of land was described in the deed. 131 Kan. at 803. The plaintiffs insisted that the entire 200-foot strip was a right-of-way, but the evidence showed that the northern strip was used for other railroad purposes, as it contained a section house used by the railroad foreman or renters, a well, and a highway which was often used to reach the depot on the southern strip. 131 Kan. at 798. On appeal this court held that:

"Where the owners of land claiming to be abutting owners on an abandoned railroad right of way whose land is separated from the real right of way or right of way proper by a strip of land to which the railroad company acquired the fee title and used it for railroad purposes other than right of way and later conveyed the same before discontinuing operations, such separation is held to deprive the first-mentioned owners of their claim or right as abutting owners in and to the right of way proper, and also in and to the intervening strip." 131 Kan. 796, Syl. ¶ 3.

In affirming, this court distinguished *Danielson* from *Abercrombie* and *Barker v. Lashbrook*, 128 Kan. 595, 279 Pac. 12 (1929), because the land in those cases was only 100 feet wide and the parties did not question whether the strip of land involved was a

right-of-way. *Danielson,* 131 Kan. at 800-01. The court concluded that no doubt existed that the parties to the deed intended the southern strip to be the only part conveyed for a right-of-way and the northern strip was not for right-of-way but was for other railroad purposes, and "[n]either can there be any question about the instrument conveying a fee title to all of it subject, of course, to the usual rule as to right of way being only an easement regardless of the language of the deed." 131 Kan. at 803-04. Applying the usual rules of construction to the deed, the court concluded that the southern strip was conveyed as a right-of-way and the northern strip was conveyed for fee purposes very much the same as was done in *Bowers v. Atchison, T. & S.F. Rly. Co.,* 119 Kan. 202, 237 Pac. 913 (1925). 131 Kan. at 804.

In *Nott v. Beightel,* 155 Kan. 94, 122 P.2d 747 (1942), two town lots were conveyed to the railroad in fee title by warranty deed without any reversion clause and without mentioning the use of the property. The lots had been used for right-of-way purposes, but the railroad had since removed its tracks from the lots. An ownership dispute arose as the railroad conveyed the land to the plaintiff, the lessee of a scale house on the land, by quitclaim deed, and the original owners of the land claimed that the land had reverted to them upon abandonment. The district court ruled in favor of the plaintiff.

The *Nott* court distinguished this case from *Abercrombie* because the land was purchased without regard to its use or being designated as a right-of-way. Noting it would be contrary to public policy for someone to whom the railroad had conveyed in fee a narrow strip of land such as a right-of-way running through farms and cities not to receive the land when it was no longer used for railroad purposes, *Nott* was distinguishable in that entire lots had been conveyed and only part of the lots were used for railroad purposes. The court noted the general rule that " '[w]here land is conveyed to the railroad company in fee without qualification, its title thereto is not lost by [nonuse] or abandonment,' " citing a California case applying this rule. 155 Kan. at 97. In concluding that the trial court correctly quieted the plaintiff's title, the court

cited the above-quoted language from *Danielson,* 131 Kan. 796, Syl. ¶ 3.

In *Harvest Queen Mill & Elevator Co. v. Sanders,* 189 Kan. 536, 537, 370 P.2d 419 (1962), the railroad and its oil and gas lessees (plaintiffs), sought to quiet title to a narrow strip of land, including the underlying minerals, running across the defendant's farm, and the defendants cross-petitioned to quiet title to the entire section of land containing the strips, conceding that a right-of-way easement existed. The original deed granted the railroad a strip of land 150 feet wide (75 feet from the center of the surveyed railway line) to be used for the purpose of building or constructing its roadbed or railway and trimming its cuts and fills and for all other purposes for the building, constructing, or maintaining of the railroad. 189 Kan. at 538. The trial court ruled that the deed clearly conveyed only an easement for railroad right-of-way purposes, that plaintiffs were not the owners of the minerals on the land, and that title should be quieted in the defendant's favor. 189 Kan. at 539-40.

On appeal, the plaintiffs argued that *Abercrombie*'s holding that regardless of the language and form of the deed, a railroad cannot take a fee simple absolute or a fee simple determinable title in land that is to be used for right-of-way purposes, should be overruled, and the court should now hold that a railroad may acquire by grant or deed a fee simple absolute or a fee simple determinable estate in land purchased for right-of-way purposes. The court declined to overrule *Abercrombie,* reasoning in relevant part:

> "We have held that when land is devoted to railroad purposes it is immaterial whether the railway company acquired it by virtue of an easement, by condemnation, right-of-way deed, or other conveyance. If or when it ceases to be used for railway purposes, the land concerned returns to its prior status as an integral part of the freehold to which it belonged prior to its subjection to use for railway purposes. (*Federal Farm Mortgage Corp. v. Smith,* 149 Kan. 789, 792, 89 P.2d 838.) This court has uniformly held that railroads do not own fee titles to narrow strips taken as right-of-way, regardless of whether they are taken by condemnation or right-of-way deed. The rule is in conformity with this state's long-standing public policy and gives full effect to the intent of the parties who execute right-of-way deeds rather than going through lengthy and expensive condemnation proceedings. [Citations omitted.]
>
> . . . .

"For many years it has been the established law of this state that railroads receive easements only in strips taken as rights-of-way, regardless of whether they are taken by condemnation or deed. The rule is based on long-standing public policy. The *Abercrombie* case was decided in 1905. For more than a half century the public has been informed as to the rights granted by such a deed. Lawyers have repeatedly examined and passed titles based upon this court's construction of such a deed. Valuable property rights have been acquired, sold and warranted based upon the knowledge that under our law such a deed conveys only an easement for right-of-way purposes." 189 Kan. at 541-43.

The *Harvest Queen* court concluded that the deed conveyed nothing more than an easement to the railroad, and the fee title to the property and the underlying minerals reverted to the defendants upon abandonment of the right-of-way. 189 Kan. at 543-44.

In *Atchison, Topeka & Santa Fe Ry. Co. v. Humberg*, 9 Kan. App. 2d 205, the railroad acquired by condemnation a 100-foot right-of-away covering three tracts of land. The railroad received a warranty deed which included in the granting clause the strip previously condemned, the three tracts of land, and other real estate. A subsequent property dispute arose between the railroad's assignee, the plaintiff, and the defendant who purchased the disputed property and claimed a right to it through adverse possession. The trial court found the plaintiff possessed a fee simple title to the disputed property, which was located outside the original 100-foot right-of-way, and the defendants' continued occupation of the property might be found to have been adverse. 9 Kan. App. 2d at 207.

The Court of Appeals examined the deed, which included a notation that stated " 'Station Grounds at Laird or Challacombe,' " but contained no other limitation on the use of the property or provisions for reversion. 9 Kan. App. 2d at 208. The panel found the notation indicated that portions of the lands conveyed were intended for use as railroad station grounds, and no evidence was presented that the plaintiff had abandoned the purposes for which its interests in the property were acquired. Applying *Harvest Queen* and *Harvey v. Railroad Co.*, 111 Kan. 371, 207 Pac. 761 (1922), the court concluded that the deed did not vest fee simple title in the named grantee but rather was for railroad purposes only,

and the defendant's use was thus not adverse to the plaintiff's interest. 9 Kan. App. 2d at 210.

In *Schoenberger v. Missouri Pacific RR Co.*, 29 Kan. App. 2d 245, 26 P.3d 700 (2000), *rev. denied* 270 Kan. 899 (2001), an 1887 order condemned a strip of land for a railroad track. One month later, an individual conveyed a quarter section of land to Memphis & Denver Town Company with mineral rights. Several months later, the company conveyed a 500-foot wide strip of land to the railroad, and then subsequently conveyed several other lots to the railroad. The railroad executed an oil and gas lease to Schoenberger, and the ownership of the land on which an oil well was situated came into issue. The trial court ruled that the preceding deeds conveyed only an easement and declared the prior leases void.

On appeal, the panel interpreted K.S.A. 66-501 *Second* to "clearly mandate that a railroad may purchase land in fee simple absolute (to hold with power to convey)." 29 Kan. App. 2d at 246. It noted that the 1887 deed conveyed the property to " 'Have and to Hold the Same Together with all and singular the tenements, hereditaments, and appurtenances thereunto belonging or in anywise appertaining forever' " and the grantor warranted it was " 'lawfully seized in [its] own right of an absolute and indefeasible estate.' " 29 Kan. App. 2d at 246. Likewise, the 1888 deed provided that the grantor conveyed the property " 'to have and to hold the same together with all and singular the tenements hereditaments and appurtenances thereunto belonging or in anywise appertaining *forever*' " and warranted it was "lawfully seized in its own right of an absolute and indefeasible estate of inheritance in fee simple." 29 Kan. App. 2d at 246.

The panel acknowledged that Kansas cases reach differing results, but noted that *Nott* and *Danielson* held a fee title is conveyed where the warranty deeds are void of any use limitations. The 1887 deed did not contain a reversion clause, and the 1888 deed did not contain any expressed use restriction. Despite the small size of the land conveyed in the deeds, the lack of any express or implied use restriction required the panel to conclude that both deeds conveyed fee title. 29 Kan. App. 2d at 247.

## Court of Appeals Decision

In this case, *Stone v. U.S.D. No. 222*, 31 Kan. App. 2d 1063, 77 P.3d 509 (2003), the Court of Appeals reviewed *Abercrombie, Nott,* and *Danielson* and concluded that "the 'use it or lose it' rule of *Abercrombie*, as was hinted at in *Abercrombie*, does not apply when the land is not mainly used as a right of way." 31 Kan. App. 2d at 1069. The court found that the subject property fit the factors set out in *Abercrombie* except that the conveyance did not specifically mention the use being for a right-of-way, and the land was to be used for railroad purposes. Based on the language in *Abercrombie*, which the court found was not restricted to cases where use for a right-of-way was specifically stated or implied in the conveyance, the court applied the rule to this case in concluding the land should revert.

The Court of Appeals distinguished this case from *Harvest Queen* because the purpose of the conveyance to the railroad was clearly for a right-of-way, causing the railroad's right to be only an easement. *Humberg* was distinguishable because it dealt with property obtained for railroad purposes by condemnation, and even though it was not for a right-of-way, its abandonment led to a reversion. *Schoenberger* was "not on point with the instant case where another issue, namely, the use to which the property was put, is paramount," and the construction of the conveyance was held not to be of critical importance in the case. 31 Kan. App. 2d at 1070. The court concluded:

> "We find that since the land in question was obtained by purchase for a railroad right of way, and other railroad uses, and that easement was abandoned, the trial court was correct in ruling that the land reverted to the original grantors.
>
> "As in other cases cited above, this ruling is applicable to relatively small portions of land. We are not called upon to rule on the effect of abandonment for railroad uses of large portions of land." 31 Kan. App. 2d at 1070.

## Resolution

The trial court's granting of summary judgment, based on undisputed facts, is a ruling of law and this court's standard of review is de novo. *Ekan Properties v. Wilhm*, 262 Kan. 495, 501, 939 P.2d 918 (1997). Likewise, the interpretation and legal effect of written

instruments are matters of law over which this court has unlimited review. *Kansas Gas & Electric Co. v. Will Investments, Inc.*, 261 Kan. 125, 128, 928 P.2d 73 (1996).

The school district argues that the language of the original deed controls the type of interest the railroad obtained and could convey in the subject property. It contends the Court of Appeals opinion erroneously applied *Abercrombie* to this case, misinterpreted or ignored *Danielson, Nott,* and *Schoenberger,* and erroneously based its decision on the small size of the subject land.

In contrast, the Stones argue the language of the original deed is largely irrelevant and the use to which the property was put, *i.e.,* as a right-of-way, is paramount. The Stones rely primarily upon *Abercrombie, Harvest Queen,* and an unpublished Court of Appeals' opinion, *Board of Riley County Comm'rs v. Chicago Pacific Corp.,* No. 66,232, filed August 30, 1991, in arguing that the railroad did not own a fee title to the land used for right-of-way purposes and that Kansas public policy forbids railroads from owning narrow strips of right-of-way property in fee simple and transferring them to owners who will put that land to a use that is obnoxious to the adjoining landowners.

Although both parties believe *Abercrombie* supports their position, the school district has the stronger argument. In support of the Stones' position, the parties do not dispute that the subject property was used as a railroad right-of-way, and the *Abercrombie* court seems emphatic that land used for railroad right-of-ways are mere easements, regardless of the language utilized in the deed. Moreover, the court looked at extrinsic evidence in construing the deed, which in this case would clearly demonstrate the subject property was intended to be used as a right-of-way. Finally, the Court of Appeals felt that *Abercrombie* did not restrict its ruling to cases where use for a right-of-way was specifically stated or implied in the conveyance.

In support of the school district's position, this case is clearly distinguishable from *Abercrombie* in that the language of the original deed is void of any use restrictions. The absence of any language designating the land for use as a right-of-way or for other railroad purposes seems to put this case squarely within the *Ab-*

*ercrombie* exception: "We are not called upon to decide . . . the rule applicable where lands are purchased or obtained without regard to the use to be made of them, or where there is nothing in the contract or conveyance indicating that they have been purchased for a right of way." 71 Kan. at 546.

Although the *Abercrombie* court was willing to ignore language in the deed regarding the type of the conveyance (fee simple, easement, fee simple determinable) intended by the parties, it was dealing with a deed that described the property in a manner that could be construed as a right-of-way, although it was ambiguous in that it referenced a railroad track which was never constructed. This ambiguity permits a court to look beyond the four corners of the deed to parol evidence which existed at the time the deed was made. See *Heyen v. Hartnett*, 235 Kan. 117, 122, 679 P.2d 1152 (1984).

When the language of the original warranty deed conveying land in fee simple absolute is unambiguous, courts thus may not use parol evidence to determine whether the land was conveyed for right-of-way purposes. In this case, the unambiguous language of the original conveyance for a section of land which was 330' x 235' x 247.5' x 235' does not suggest that it is to be used as a right-of-way. Only by using parol evidence, *i.e.*, the subsequent deeds referring to a right-of-way, is it possible to determine that a portion of land originally conveyed was going to be used as a right-of-way. As no ambiguity existed in the original deed, the trial court and the Court of Appeals in this case should not have looked to this extrinsic evidence in concluding that the subject property was used for right-of-way and other railroad purposes.

The general rule is that deeds purporting to convey to railroads a strip, piece, parcel, or tract of land which do not describe or refer to its use or purpose or directly or indirectly limit the estate conveyed are generally construed as passing an estate in fee. Annot., 6 A.L.R.3d 973, 979. The cases discussed above essentially follow this general rule.

In *Abercrombie*, *Harvest Queen*, and *Humberg*, all of the deeds referred to the land being used as a right-of-way or for some other railroad purpose, and all of the cases found that the land had been

conveyed as an easement. In contrast, *Danielson, Nott,* and *Schoenberger* all found that property which was conveyed by deed that did not limit the use of the land to right-of-way purposes had been conveyed in fee simple. This was true despite the fact that the land in *Nott* and *Danielson* was used for railroad purposes, and the land in *Danielson* and *Schoenberger* was, in both cases, small in size. Although the size of the land described may help the court determine whether a right-of-way was intended in construing an ambiguous deed, the small size of the land is clearly not determinative of the issue.

After reviewing this case law, we believe this case is most analogous to *Nott*. In both cases, relatively large portions of land were conveyed to the railroad, the deed was void of any use restrictions, and portions of the land were used for right-of-ways which were subsequently abandoned. In *Nott,* the fact that portions of the land were used for right-of-way and railroad purposes did not prevent the court from finding that entire tracts were held in fee simple. In this case, the only distinction is that a portion of the original conveyance was subsequently sold by the railroad, leaving a smaller piece of property when the right-of-way was abandoned. We do not believe that this subsequent conveyance changed the fee title held in the subject land.

The Stones' public policy argument also is without merit. Although the end result in this case is that the railroad owned a small piece of land which had been used as a right-of-way in fee simple, as noted in *Nott,* the initial conveyance in fee simple was for a much larger piece of land which was not designated for right-of-way purposes. The small size of the subject land in this case is only the result of the railroad's subsequent decision to sell a portion of the land it received in the initial conveyance. Had the railroad kept all of the initial conveyance, it would have been able to convey the land in fee simple anyway. As such, this is not the type of situation that the public policy was designed to protect against.

We conclude that the Court of Appeals erred in affirming the trial court's grant of partial summary judgment in favor of the Stones. The original unambiguous deed did not contain any use restriction or reversion clause and, thus, granted the railroad title

to the land in fee simple absolute. The railroad sold off a portion of that land but retained a fee simple interest in the subject land. The fact that the subject land was later used for a right-of-way and then abandoned did not prevent the railroad from conveying the property to the school district in fee simple absolute. As the subject property did not revert to the Stones upon abandonment, the Court of Appeals decision must be reversed and the case remanded to the trial court with instructions to enter a partial summary judgment in favor of U.S.D. No. 222.

Reversed and remanded with directions.